IDA BONAPART v. W. M. NISSEN, FRANK L. BLUM & COMPANY,
AND THE CITY OF WINSTON-SALEM.

(Filed 8 January, 1930.)

1. **Municipal Corporations E e; Negligence A c—Evidence of joint negligence of city and another resulting in injury from falling wall held sufficient.**

    Where there is evidence tending to show that the private owner of a building left part of the building wall standing in an unsafe condition after the building had been condemned by the city building inspector, and that the city had constructed a retaining wall contiguous thereto, but had failed to construct weep holes therein so that the waters from the lands of the private owner were ponded back on his lands and seeped through the ground and sobbed and softened the foundations on the building wall so that after a heavy rain it fell over into the city market place and injured the plaintiff: *Held*, the evidence discloses joint negligence on the part of the city and the private owner, and the injury therefrom could have been reasonably anticipated, and is sufficient to sustain the verdict of the jury against them as joint *tort-feasors*, and that there was no primary and secondary liability between them, and defendants' motion as of nonsuit was properly denied.  C. S., 567.

2. **Trial E g—Error in explaining law in stating contentions of parties held not reversible, construing the charge as a whole.**

    Where in an action to recover damages for a personal injury alleged to have been caused by the negligence of the defendants, the judge in his charge to the jury states the respective contentions of the parties, and then correctly charges the law arising from the evidence in the case, construing the charge as a whole it will not be held as reversible error that in his statement of the contentions of the parties he did not refer to the element of proximate cause, having given it in his charge as to the law.

APPEAL by defendants from *Lyon, J.,* and a jury, at June Term, 1929, of FORSYTH. No error.

This is an action for actionable negligence brought by plaintiff against defendants for injuries received.

*The facts:* W. M. Nissen is the owner of a lot in the city of Winston, in the rear of Nissen's lot is the Winston-Salem market. The Nissen lot is higher than the market lot. The natural flow of water from the Nissen lot was originally on the market lot. In 1925 the city excavated its lot and constructed a concrete retaining wall about 420 feet long which runs from 4 feet in height to a maximum of 10 feet and back to 7 feet at the other end. The concrete wall is about 7 feet high at the south end and 8 feet at the north end of the *Nissen property.* The natural earth is about 12 inches above and close to the top of the concrete wall, as it extends along the rear of the Nissen lot. The concrete wall varies in thickness, in the rear of the Nissen property it is 21

inches thick. It was in evidence that the foundation of the Nissen brick wall was below, some 8 inches or a foot, the top of the concrete wall.

C. S., 2773, 2774 and 2776, make provision that the local inspector of the municipalities of over 1,000 inhabitants can, when it appears that a building is especially dangerous condemn same—"shall be held to be unsafe"—and punishment is fixed for allowing unsafe buildings to stand after certain notice. About the first of July, 1928, the inspector condemned the west wall of the Nissen building adjacent to the city market, and recommended to the owner. to make it safe or tear it down. After the owner was notified, he had the defendants Frank L. Blum & Company to do the work. After it was torn down, the building inspector refused to allow it built back on the portion of wall which was left as the foundation was "too bad to build on." There was evidence to the effect that Blum & Company were agents of Nissen and not independent contractors of W. M. Nissen and had done the work with due care. The Nissen wall adjacent to the market was torn down to the level of the concrete floor and the remaining part of the wall, which was 8 or 9 feet in height, was left standing for sometime.

The retaining wall, built by the city, adjoining the Nissen property, was built without any reinforcing steel, without any tie rods, and without weep holes. Sometime after it was erected it cracked and began to lean or bulge at the top. To remedy this the city drilled weep holes in the wall for the purpose of releasing any accumulation of water from behind it and at certain points put in tie rods to keep the wall from moving or bulging any further. Into the space left between the wall after it had moved and the dirt from which it had moved the city filled with rock. During the forty-nine hours immediately preceding the time the wall fell there was a rainfall in Winston-Salem of 5.46 inches, which was the heaviest rainfall that had been recorded in Winston-Salem during 6 years. The city used the property adjacent to the Nissen property for market purposes.

After the wall was built, it was in evidence that water collected between the concrete retaining wall and the wall of the Nissen building and caused the concrete retaining wall to move westwardly a few inches immediately west of the Nissen property which it was in evidence affected the foundation of the Nissen wall. The building of the concrete wall without sufficient weep holes, it was in evidence, caused the water from the heavy rains which fell during the forty-nine hours immediately preceding the disaster to pond back of the concrete retaining wall, and it was in evidence in this way the earth was softened and the foundation under the Nissen wall was injured and damaged. The wall of the Nissen building left standing for some time, on August 11, 1928, fell over the

concrete wall into the market place, a curb market, on plaintiff when she was there for the purpose of purchasing produce and seriously injured her, for which this action is instituted.

The issues submitted to the jury and their answers thereto, were as follows:

"1. Was the plaintiff injured by the negligence of the defendant, W. M. Nissen, as alleged in the complaint? Answer: Yes.

"2. Was the plaintiff injured by reason of the negligence of the defendant, Frank L. Blum & Company, as alleged in the complaint? Answer: No.

"3. Was the plaintiff injured by reason of the negligence of the defendant, city of Winston-Salem, as alleged in the complaint? Answer: Yes.

"4. Was the negligence of W. M. Nissen primary and that of the city of Winston-Salem secondary? Answer: No.

"5. Was the negligence of Frank L. Blum & Company primary and that of the city of Winston-Salem, secondary? Answer: ......

"6. What amount, if any, is the plaintiff entitled to recover of the defendant? Answer: $3,500."

The defendants made numerous exceptions, assignments of error and appealed to the Supreme Court.

*J. M. Wells, Jr., and John C. Wallace for plaintiff.*
*Efird & Lüpfert and Manly, Hendren & Womble for W. M. Nissen.*
*Parrish & Deal for city of Winston Salem.*

CLARKSON, J. At the close of plaintiff's evidence and at the close of all the evidence the defendants, W. M. Nissen and the city of Winston-Salem, made motions for judgment as in case of nonsuit. C. S., 567. The court below overruled these motions and in this we can see no error.

The jury having acquitted Blum & Company of any negligence, and there being also evidence to the effect that they were merely agents of W. M. Nissen, they are out of the picture. The jury found both W. M. Nissen and the city of Winston-Salem negligent as joint *tort-feasors* and there was evidence to sustain the finding. The jury further found that as between Nissen and the city of Winston-Salem there was no primary and secondary negligence or liability. No exception was taken to the issue. On the record, which is voluminous, we think there is ample evidence for the jury to find the joint negligence of Nissen and the city.

The natural drain from the Nissen property was on the city market property. The city dug down the bank and built a concrete retaining wall near to the building on the Nissen property.

The principle of law is stated thus in *Porter v. Durham,* 74 N. C., at p. 779. "It has been held that an owner of lower land is bound to receive upon it the surface water which falls on adjoining higher land, and which naturally flows on the lower land. Of course when the water reaches his land the lower owner can collect it in a ditch and carry it off to a proper outlet so that it will not damage him. He cannot however raise any dyke or barrier by which it will be intercepted and thrown back on the land of the higher owner. While the higher owner is entitled to this service, he cannot artificially increase the natural quantity of water, or change its natural manner of flow by collecting it in a ditch and discharging it upon the servient land at a different place, or in a different manner from its natural discharge." *Winchester v. Byers,* 196 N. C., at p. 384.

In reference to the reciprocal duty that Nissen and the city of Winston-Salem owed as adjoining property owners, we find in *Davis v. Summerfield,* 131 N. C., at p. 354 (see, also, 133 N. C., 325), the following: "The true rule deducible from the authorities seems to be that, while the adjacent proprietor cannot impair the lateral support of the soil in its natural condition, but is not required to give support to the artificial burden of a wall or building superimposed upon the soil, yet he must not dig in a negligent manner to the injury of that wall or building, and it is negligence to excavate by the side of the neighbor's wall, and especially to excavate deeper than the foundation of that wall, without giving the owner of the wall notice of that intention, that he may underpin or shore his wall, or relieve it of any extra weight on the floors, and the excavating party should dig out the soil in sections at a time so as to give the owner of the building opportunity to protect it and not expose the whole wall to pressure at once. The defendants did not give any notice of the nature of their proposed excavation, and the evidence justified the jury in finding them guilty of negligence."

It was the contention of plaintiff that the Nissen building after being condemned was partly torn down and a certain wall was left standing for sometime in an unsafe condition. The foundation was too bad to build on. It could be readily seen, if the standing wall fell, it would, as it did, fall over the city concrete retaining wall into the curb market where people assembled for trade. That it was the duty of the city to so build its concrete retaining wall adjoining the Nissen property that the natural drainage of water would not be thrown back on the Nissen property, the higher owner. That this was not done and that the retaining wall was defectively constructed and the water that naturally flowed from the Nissen property on the market lot had no sufficient

outlet, and owing to the heavy rains the water was ponded back of the concrete retaining wall of the city and sobbed and softened the earth and weakened the foundation of the Nissen wall, which was improperly built and made heavier by the wall being wet by the heavy rains, and these conditions caused the wall to fall. That both Nissen and the city of Winston-Salem failed to use due care under all the circumstances. That it could be reasonably anticipated that the particular injury or harm might follow the wrongful acts. *Hall v. Rinehart,* 192 N. C., 706. There was evidence to sustain these contentions and the jury found that they were jointly negligent. We think the verdict should be sustained and we find no prejudicial or reversible error in the record, as we will hereafter indicate.

There are various contentions made by both Nissen and the city of Winston-Salem, but we do not think they are material from the view we take of the case. Both Nissen and the city of Winston-Salem contend that a new trial should be granted on the following excerpt from the charge: "She contends, gentlemen of the jury, further, that each of the defendants had been guilty of actionable wrong, both collectively and separately, and that these wrongs caused the injuries she sustained. The plaintiff sets out a number of different allegations of actionable negligence. It is not necessary that they prove each of these acts of negligence for you to find that any or all of the defendants have been guilty of actionable wrong. (If you should find by the greater weight of the evidence that the plaintiff has proved a breach of duty of any one of the defendants to the plaintiff, then the proving of that one breach on behalf of any one of the defendants is sufficient for you to answer the issue as to negligence against that particular defendant Yes.)" We give the whole of this part of the charge—the exception is to the above portion of the charge in parenthesis. This excerpt was taken from that portion of the charge setting forth the contentions, and the defendants contend that this statement leaves out a fundamental principle that the negligence of the parties must be the proximate cause of the injury. This is axiomatic, but the court below was merely setting forth in the contentions the duties of the parties.

After setting forth fully the contentions of all the parties, the court said: "Gentlemen of the jury, these are the contentions of the respective parties. . . . The burden of these issues, that is the 1st, 2nd, 3rd and 6th issues, is on the plaintiff to satisfy you from the evidence and by the greater weight of the evidence that she is entitled to recover of each of these defendants. As I told you in the beginning, this action is based on the alleged negligence of the respective defendants, or any of them. Now, it is necessary for the jury to understand what negligence

is. Negligence is the failure to do that which a reasonably prudent man would ordinarily have done under the circumstances and the situation, or the omission to use means reasonably necessary to avoid or prevent injury to others. To establish actionable negligence the plaintiff is required to show by the greater weight of the evidence, first, that there has been a failure to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff at the time and under the circumstances in which they were placed, proper care being that degree of care which a prudent man should exercise ordinarily under like circumstances and charged with a like duty; and, second, it must appear that such negligent breach of duty was the proximate cause of the injury, the cause that produced the result in continuous sequence, and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed."

"It is well settled that when there are conflicting instructions upon a material point, a new trial must be granted, as the jury are not supposed to be able to determine when the judge states the law correctly and when incorrectly." *Edwards v. R. R.,* 132 N. C., at p. 101. *May v. Grove,* 195 N. C., 235.

The excerpt from the charge complained of was in the contentions. The charge fully covered the law. The allegations of actionable negligence and the breach' of duty set forth in the contentions are fully explained in the charge, what it consists of and negligence, and that it must be the proximate cause of the injury. We cannot see how the jury could have been misled and taking the contention with the charge on the law the matter is fully explained. If the contentions are strictly taken as a part of the charge and if we construe the contentions with the charge they are reasonably reconcilable. The charge should be considered as a whole. If the charge, as a whole, is correct, an expression standing alone, though technically incorrect is not reversible error. *Purnell v. R. R.,* 190 N. C., 573.

The record consists of 291 pages, which we have read with care. We have examined the assignments of error and authorities cited in the able briefs of defendants. We do not see any new or novel propositions of law. From a thorough examination of the record and authorities, we cannot find any reversible or prejudicial error.

No error.