The cause of action, and orders made therein in reference to amendment of pleadings, are stated in the case on appeal as follows: The action was originally brought by the plaintiff against defendants, alleging that he was the owner of one team of mules, one team of horses, one four-horse wagon, four sets of harness, one car-load of cotton-seed meal and hulls, and about three hundred poplar logs of the value of $700. During the progress of the trial the plaintiff asked to be allowed to amend the first paragraph of his complaint by striking out the words "three hundred" and inserting in lieu thereof the words "eight hundred and forty," making the said paragraph read "eight hundred and forty *Page 283 
poplar logs" instead of "three hundred poplar logs." The court, in the exercise of its discretion, allowed the amendment, to which order the defendants objected and excepted.
There was evidence tending to show that defendants, having an account against the Benedict Love Company, sued out an attachment and had same levied on two mules, two horses, a four-horse wagon, some harness, and a lot of feed, as the property of said (388) company, and held same for eighteen days; that plaintiff, claiming to own the property, had obtained possession of same before this action was brought. How this was done does not distinctly appear, but by fair intendment it was brought about under order of the court in some former action of claim and delivery against the officer having charge and control of the property. On the issue as to damages, and over the defendants' objection, pointed by exceptions duly noted throughout, there was evidence offered tending to show that at the time of the seizure plaintiff had a contract to deliver logs at the mill of the Benedict Love Company, at the rate of 500,000 feet per month, and was engaged in proper performance of his contract; that he had sixty-five steers and seventy-five or a hundred hands at a logging camp some miles distant from a railroad station, and the feed was a part of his necessary supplies, and the teams were engaged in hauling the feed to his camp, and he was unable to procure other teams or feed within the period of eighteen days specified, and as a result of the seizure his hands became demoralized and left. His steers were necessarily idle during the time and unemployed, and if his work had not been so interrupted he could have delivered at the mill during this period as much as 300,000 feet of lumber, at a profit of $2 per thousand, and that he had the lumber accessible for the purpose of the contract. Plaintiff was further allowed to state, over defendants' objection and with exceptions duly noted, that he was engaged in building a splash dam to carry the logs to defendants' mill, some distance below, on the river, and had deposited seven or eight hundred logs on the river, ready to be moved, and that the building of the dam was likewise interrupted, and in about thirty days thereafter, owing to a flood in the river, the logs which had been put in position were washed away and lost, to the value of $700 or $800.
Issues were submitted, and responded to by the jury, as follows: (389)
First. "Was the plaintiff, Bowen, the owner of the personal property described in his complaint, and entitled to the possession thereof?" Answer: "Yes."
Second. "Was the property wrongfully taken from the plaintiff's possession by the defendants and wrongfully detained by them?" Answer: "Yes." *Page 284 
Third. "What damage has the plaintiff sustained by reason of the wrongful taking and detention of the said property by the defendants?" Answer: "$1,250."
Exceptions to the charge were also noted, and are referred to in the opinion. There was judgment on the verdict for plaintiff, and defendants excepted and appealed.
After stating the case: The court was asked to hold that, unless defendants had possession of the property at the time the present action was commenced, plaintiff could not recover. The position is correct, as applied to actions brought to recover the possession of the property itself. Such action only lies against the one who has possession of the property at the time the same is instituted. Webb v. Taylor, 80 N.C. 305;Haughton v. Newberry, 69 N.C. 456. While the allegation of the complaint may be broad enough to constitute a demand for the possession, it is evident, from a perusal of the entire pleadings, that the demand was not intended to be for the possession, which the plaintiff undoubtedly had when the action was commenced, but was to recover damages caused by reason of the wrongful seizure and detention of the property. As heretofore stated, it does not definitely appear how plaintiff reacquired possession of the property; but, assuming — and there are statements from some of the witnesses tending to show this — that (390) the possession was restored by means of a former action of claim and delivery, while plaintiff could have had his damages assessed in the former action (Revisal, sec. 570), the authorities seem to be to the effect that he was not required to take this course, but, after obtaining possession, could, in another action, recover damages for the injury done by the wrongful seizure and detention of his property. Woody v. Jordan,69 N.C. 189; Asher v. Reizenstein, 105 N.C. 213.
Again, the court was requested to charge that defendants could not be held liable in the present case because of the existence, at the time of the seizure, of an unsatisfied mortgage in favor of their debtor, the Benedict Love Company, and against which the attachment had been issued. This prayer for instructions was correctly refused by the court. In the absence of statutory provision, the interest of a mortgagee in personal property while the mortgagor remains in possession, having also an interest therein, is not the subject of levy by direct seizure, either under attachment or execution. Freeman on Executions, secs. 118-184; 20 A. E. Enc., 974. The right of the mortgagee in the property, on the facts presented, was simply that of a creditor, and his interest as creditor *Page 285 
could only be levied on as directed by provisions of Revisal, sec. 767, to be collected and applied under the direction and supervision of the court.
On the issue as to damages we think there was error. It is well established that, in a "pure tort," the case presented here, the wrongdoer is responsible for all damages directly caused by his misconduct, and for all indirect or consequential damages which are the natural and probable effect of the wrong, under the facts as they exist at the time the same is committed and which can be ascertained with a reasonable degree of certainty. Johnson v. R. R., 140 N.C. 574; Sharpe v. Powell, 7 L. R., 1892, 253; 8 A. E. Enc., 598; Hale on Damages, 34, 35, et seq.
This last author, in substance, says that a wrongdoer is liable for all damages which are the proximate effect of his wrong, and (391) not for those which are remote; "that direct losses are necessarily proximate, and compensation, therefore, is always recoverable; that consequential losses are proximate when the natural and probable effect of the wrong." A well recognized restriction, applying in cases of tort and contract, and as to both elements of damages, is to the effect that the injured party must do what he can in the exercise of reasonable care and diligence to avoid or lessen the consequences of the wrong, and for any part of the loss incident to such failure no recovery can be had. This limitation was approved by us in a case of contract, in Tillinghast v.Cotton Mills, 143 N.C. 268, and directly applied to a case of tort, in R.R. v. Hardware Co., 143 N.C. 54. A full consideration of the facts and the charge of the court leads us to the conclusion that the defendants have not had the benefit of this limitation in the trial of the present case. A verdict of $1,250 damages for the detention of two mules, two horses, a wagon, and a lot of feed for a period of eighteen days, when they were all restored to the owner, uninjured, so far as the facts show, is an unusual amount of consequential damages, and to be sustained, if at all, only under very exceptional circumstances. We are inclined to the opinion that if plaintiff should establish that the seizure of his teams had the necessary effect of interrupting his operations in getting out lumber for a definite time, and he should show that, the lumber being obtainable and accessible, he could, during the time he was wrongfully deprived of his property, have delivered as much as 300,000 feet of lumber at a profit of $2 per thousand, this profit is the most definite and satisfactory rule for estimating his loss that could be adopted, on the facts presented, the evidence being to the effect that no other employment was open to him; but such an interruption would only be natural and probable if it should be established as the necessary result of the defendants' wrong, under exceptional conditions existing at the time, and then only to the extent that it could not have been (392) avoided or diminished by reasonable diligence on the part of *Page 286 
plaintiff. There is evidence tending to show that some of the property the teams and wagons — was replevied from the officer under court proceedings. This was allowable to plaintiff when his property had been wrongfully seized as that of another. Mitchell v. Sims, 124 N.C. 411. And there is no claim, and no testimony tending to show, that this course could not have been at once taken, all the property replevied, and almost the entire loss claimed by the plaintiff prevented. This was held to be incumbent on the party injured, if same could have been done by reasonable effort, in R. R. v. Hardware Co., supra, and we think the defendants were entitled to have this view presented to the jury. Or, if the plaintiff, under the circumstances and in a shorter time, and in the exercise of reasonable effort, could have procured other feed and have had it hauled by ox carts and other means, he should have taken this, if a reasonable and prudent course by which his loss could have been reduced. And it may be well here to note that if the jury should award plaintiff damages on the basis of the profit he could have made during the time his work was necessarily interrupted, he should not have, in addition, the direct damages arising from a fair value for the loss of the use of the teams, because, in the event suggested, the use of the teams would be required in making the alleged profit. He can recover for the value of the use of the teams — this is direct damages; but both should not be allowed. And as to the logs which had been placed on the river preparatory to being floated down by the completion and operation of the splash dam, the loss occurred more than thirty days after the seizure and more than twelve days after the teams had been recovered and the plaintiff had resumed business. There is no testimony or suggestion that the logs could not have been secured and saved by proper effort on the part of plaintiff and his employees, and we are of opinion that, on the facts presented, (393) this loss had no reasonable or natural connection with the seizure of plaintiff's teams, and all consideration of it should have been excluded from the jury. The court did do this in one part of the charge, but in another he charged the jury as follows: "If plaintiff was prevented from floating lumber, which was his, during the eighteen days, by reason of not having a team to prepare it, etc., and that was the direct cause of damage, and the logs lost in the meantime by flood, which would have been prevented, then the jury will give actual damages resulting from such loss." There was no evidence whatever of such loss during the eighteen days when plaintiff claims his teams were wrongfully withheld from him. And in another part of the charge the court, in substance, told the jury that the loss by reason of logs carried away by the flood was too remote for recovery. This conflict in the charge has, however, evidently operated to defendants' prejudice, for it is only by allowing for the loss that the jury could have awarded the sum given in the verdict. *Page 287 
We are referred by defendants to Sledge v. Reed, 73 N.C. 440, as authority for the position that, on the facts in this case, only direct damage should be allowed — that is, a fair price for the use of the teams while wrongfully withheld. But consequential damages were refused inSledge's case because there was no evidence that plaintiff could not have procured another horse, by reasonable effort, with which to make his crop; and there was intimation, too, that the result of any given crop year was too uncertain to be regarded as the proximate result of plaintiff's wrong. It is the general rule that damages which cannot be established with reasonable certainty, or which are contingent or speculative, cannot be allowed, and anticipated profits, in the ordinary sense of that term, are usually within the prohibition. As said in Hale on Damages, however (p. 70), "Absolute certainty is not required, but both the cause and probable amount of the loss must be shown with reasonable certainty." And, accordingly, it is held "that profits which would (394) certainly be realized but for defendant's default are recoverable." A good illustration of this distinction will be found in Johnson's case,supra, where, in negligent destruction of plaintiff's factory for the manufacturing of baskets, crates, etc., it was held that profits on sales already made, and which plaintiff would have had the present ability to complete but for the wrong done him, were allowed as proximate, but anticipated profits which might otherwise arise from continuance of the business, on the facts there presented, were regarded as speculative and contingent, and, therefore, too remote for recovery.
We think, in the present case, that if it should be properly shown that plaintiff's business was necessarily and wrongfully interrupted for a definite time, and to an extent which plaintiff could not have lessened by reasonable effort, and that during such time plaintiff could with the means at his disposal have delivered a definite amount of lumber at a certain profit, under the principle of Johnson's case, such a loss would be sufficiently certain for consideration and could be properly made the basis of the jury's award of consequential damages.
For the error pointed out there will be a new trial on all of the issues, and it is so ordered.
New trial.
Cited: Hocutt v. Tel. Co., 147 N.C. 193; R. R. v. R. R., ib., 384;Wilkinson v. Dunbar, 149 N.C. 23; Harper v. Lenoir, 152 N.C. 728, 730;Harvey v. R. R., 153 N.C. 575; Carmichael v. Telephone Co., 157 N.C. 27;Ludwick v. Penny, 158 N.C. 113; Fields v. Brown, 160 N.C. 297;Wilson v. Scarboro, 169 N.C. 657; Weeks v. Tel. Co., ib., 704; Cotton OilCo. v. Tel. Co., 171 N.C. 708; Hardware Co. v. Lewis, 173 N.C. 293;Conrad v. Shuford, 174 N.C. 721. *Page 288 
(395)