CITY OF RALEIGH v. A. J. EDWARDS AND WIFE MAMIE H. EDWARDS (DEFENDANTS), AND W. HAROLD BARBEE AND WIFE VIRGINIA M. BARBEE (INTERVENING DEFENDANTS).

(Filed 11 June, 1952.)

**1. Eminent Domain § 6—**

In a proceeding by a municipality to condemn land for an elevated water storage tank, intervening property owners may not defend on the ground that the erection of the tank would amount to a partial taking of their dwelling property in contravention of G.S. 40-10, since the provisions of that statute have no application in proceedings by the city to acquire land for water purposes. G.S. 160-204, G.S. 160-205.

**2. Eminent Domain § 18b—**

In a proceeding by a municipality to condemn land for an elevated water storage tank, intervening property owners claiming that the erection of the tank would be a partial taking of their vested property rights for which compensation should be paid *held* entitled to join the additional defense that the erection of the tank would constitute a nuisance amounting to a partial taking of their dwelling property in contravention of G.S. 40-10.

**3. Nuisance § 3a: Eminent Domain § 1—**

In an action by a municipality to condemn land for an elevated water storage tank, allegations of intervening property owners that the operation of the tank would constitute a nuisance in the overflow of water from the tank on their premises and the increase in water pressure in the pipes in their dwellings *held* no defense, and the city's demurrer thereto is properly sustained, since an elevated water storage tank is not a nuisance *per se* and the pleading of prospective damage in its operation is premature, since such damage cannot be recovered by interveners before they have occurred.

**4. Easements § 5: Deeds § 16b—**

Restrictive covenants in deeds to purchasers of land within a development create a negative easement constituting a vested interest in land.

**5. Eminent Domain § 3—**

Where a municipality condemns land for the erection of an elevated water storage tank in a development which is subject to covenants restricting the use of the land to private dwelling purposes alone, *held* the violation of the negative easements constitutes a taking of vested interests in property for which the owners are entitled to compensation commensurate with any loss they may sustain. Art. I, sec. 17, of the Constitution of N. C.; Fifth Amendment to the Constitution of the United States.

APPEAL by petitioner, City of Raleigh, from *Carr, J.,* March Term, 1952, of WAKE.

Special proceeding instituted by the City of Raleigh, a municipality, against the respondents, A. J. Edwards and Mamie H. Edwards, to condemn certain lots within the City as a site for the erection of an elevated

water storage tank, heard below on demurrer to the answer filed by the interveners, W. Harold Barbee and wife Virginia M. Barbee, who, as adjoining landowners, allege that the erection of the proposed water tank will (1) constitute a nuisance amounting to a partial taking of their home as prohibited by G.S. 40-10, and (2) impair the value of their property by depriving them of the benefits of existing covenants restricting to "private dwelling purposes only" the use of the property sought to be condemned.

The case was here at the Fall Term, 1951, on appeal by both the petitioner and the interveners. The decision dismissing both appeals on procedural grounds is reported in 234 N.C. 528, 67 S.E. 2d 669, where the background facts may be found.

When the case went back to the court below, the interveners, Barbee and wife, filed answer setting up affirmative defenses as follows:

"A. These defendants, as well as all other persons owning or claiming to own an interest in lots appearing in the subdivision known as the Fairview Section of Budleigh, have an interest in the subject matter of this proceeding and an interest in the lands described in the petition herein which are or may be materially affected by any judgment rendered herein, the property and interests of these defendants and of said other lot owners in Budleigh arising as follows:

"1. Cloverdale, Incorporated, was heretofore the owner of a tract of land formerly adjacent to and now within the City limits of the City of Raleigh, N. C., as same appears of record in the office of the Register of Deeds of Wake County, North Carolina, in a map recorded in Book of Maps 1928, at page 1, which map is made part of this answer in like manner as if herein set out in detail, and Cloverdale, Incorporated, during or about the year 1927, undertook to develop, and has developed under a general scheme and plan of development whereby said development was restricted to residential uses only, and sold said land as a high-class suburban residential section known as the "Fairview Section of Budleigh."

"2. In carrying out said plan of development Cloverdale, Incorporated, inserted in the deeds affecting the conveyances of all of the lots in said subdivision certain covenants, conditions, and restrictions among which was the following:

" 'There shall not be erected on any lot as such lot may be described and designated on said plat more than one private dwelling house and the necessary outhouses; said premises shall be used for said private dwelling purposes only, and each dwelling so constructed shall cost not less than Seven Thousand and No/100 ($7,000.00) Dollars, . . .'

"That said covenant has not expired and does not expire until April 1, 1978.

"3. The property of the defendants Edwards in which these defendants and all other lot owners have an interest or estate, and which are sought to be condemned and taken by this proceeding are a portion of lots Nos. 2 and 3 as same appear upon the aforementioned map of the Fairview section of Budleigh, and the aforementioned restrictive covenant is in full force and effect with respect to said lands so proposed to be taken.

"4. These defendants are the owners of a portion of lots Nos. 4 and 5 as the same appear on said map and said covenants and restrictions are in full force and effect as respects the lots of these defendants.

"5. The property sought to be condemned by the petitioner abuts directly upon the rear lot of these defendants and said tank if so erected will be within a few feet of the dwelling house of these defendants and will be erected in violation of the covenants, restrictions, and conditions above referred to and contrary to the plan and scheme of development above mentioned and will result in irreparable damage to these defendants and be in direct violation of their rights and easements in said lands.

"6. These defendants are advised, informed and believe and, upon such information and belief, allege that the erection of the large unsightly water tank on the lands immediately abutting the lands of these defendants will constitute a burden and nuisance upon the lands of these defendants in that said water tank from time to time will overflow and either spray or pour water upon the lands of these defendants and the dwelling house thereon; and further in that the location of said tank so close to the dwelling house of these defendants will cause the water pressure in the dwelling house of these defendants to be so great that from time to time there will be exceedingly great danger of the bursting of the water pipes in the dwelling house of these defendants; that the erection of the large unsightly water tank immediately to the rear of the premises of these defendants and almost overhanging their home is so located as to be unduly offensive to the neighbors of these defendants and to the general public and to the defendants themselves resulting in substantial injury to these defendants, not only in great diminution of the value of property of their home, but to the reasonable and comfortable use by and enjoyment of their property, rendering the ordinary use of their home uncomfortable and unpleasant to them and amounting in law to the taking of their dwelling house within the principle of eminent domain and condemnation proceeding thereunder.

"B.   These defendants are advised and believe that the taking of their home or dwelling house is prohibited by the provisions of 40-10 of the Statutes of North Carolina relating to eminent domain and they therefore aver that the petitioner is without power to condemn the premises sought to be condemned in this proceeding.

"C. If petitioner can in law condemn the lands and premises sought to be condemned by this proceeding, then these defendants aver that by the condemnation of said land and the use thereof by the petitioner in violation of the restrictive covenants as contained in the deeds pertaining to the title to said lands, the defendants will be greatly damaged in their property and they are entitled to have such damages determined and assessed in this proceeding."

The petitioner, City of Raleigh, demurred to the further answer, including both affirmative defenses therein alleged, (1) for failure to state facts sufficient to constitute a defense, and (2) for misjoinder of the nuisance defense.

The demurrer first came on for hearing before the Clerk of the Superior Court of Wake County. The Clerk entered an order overruling the demurrer, to which the petitioner, City of Raleigh, excepted and appealed to the Judge of the Superior Court, who signed an order "overruling in all respects the demurrer" and affirming the previous order of the Clerk.

The petitioner, City of Raleigh, appealed, assigning errors.

*Paul F. Smith, Henry H. Sink, and Grover H. Jones for plaintiff, appellant.*

*Ruark & Ruark and Joseph C. Moore for interveners, appellees.*

JOHNSON, J. This appeal from the ruling of the court below on the petitioner's demurrer tests the sufficiency of the interveners' answer to allege facts sufficient to constitute these alternate affirmative defenses: (1) that the erection by the City of Raleigh of the proposed elevated water storage tank on lands adjoining their home site would constitute a nuisance, impairing the value of their property and amounting in law to a partial taking of their home, as prohibited by G.S. 40-10; (2) that the erection of the proposed water tank in violation of the covenants restricting the use of all the property in the subdivision to "private dwelling purposes only" would deprive the interveners of vested property rights of substantial value created by these restrictive covenants, entitling them to compensation for such deprivation, in the event their cause of action in nuisance should fail and the City should prevail in its attempt to erect the proposed water tank.

1. *The Nuisance Defense.*—Notwithstanding governmental immunity from liability for negligent tort (*Millar v. Wilson*, 222 N.C. 340, 23 S.E. 2d 42; *Stephenson v. Raleigh*, 232 N.C. 42, 59 S.E. 2d 195), our decisions hold—and they are in accord with the weight of authority elsewhere—that the creation and maintenance of a governmental project so as to constitute a nuisance substantially impairing the value of private property, is, in a constitutional sense, a taking within the principle of eminent

domain. *Hines v. Rocky Mount,* 162 N.C. 409, .78 S.E. 510; *Dayton v. Asheville,* 185 N.C. 12, 115 S.E. 827. See also *Hiatt v. Greensboro,* 201 N.C. 515, 160 S.E. 748; *Jones v. High Point,* 202 N.C. 721, 164 S.E. 119; *Gray v. High Point,* 203 N.C. 756, 166 S.E. 911; *Hudson v. Morganton,* 205 N.C. 353, 171 S.E. 329; Anno.: 2 A.L.R. 2d 677.

In *Dayton v. Asheville, supra,* in holding that the City of Asheville in impairing the value of neighboring property by the erection and operation of an incinerator might be liable for the damage thereby caused (as a taking within the principle of eminent domain), notwithstanding the incinerator was operated in the exercise of a governmental duty in disposing of the city garbage, *Stacy, J.,* speaking for the Court, said: ". . . the city having a right to erect the incinerator and to maintain it for the benefit of the public, in the exercise of a governmental duty, it will not be held civilly liable to individuals for injuries resulting therefrom, when properly built and operated, upon the theory of a trespass, in the absence of some legislative authority or a statute conferring such right of action. . . . But the denial of a right to recover against a municipality for an alleged injury upon the theory of its constituting a trespass does not militate against the right of recovery for a taking or appropriating, in whole or in part, of property for a public use without due compensation. . . . 'Public necessity may justify the taking, but cannot justify the taking without compensation.' "

In the instant case the interveners allege in substance that the erection of the proposed water tank on the Edwards property "almost overhanging their home" will overflow and spray or pour water on their dwelling house, and that the water pressure in the house will be so increased, by reason of the close proximity of the tank, as to create a grave danger of "bursting the water pipes" in their home, thus amounting to a nuisance greatly diminishing the value of their home and rendering its ordinary use "uncomfortable and unpleasant to them and amounting in law to a taking of their dwelling house," as prohibited by the provisions of G.S. 40-10.

G.S. 40-10 provides as follows: "No such corporation shall be allowed to have condemned to its use, without the consent of the owner, his dwelling house, yard, kitchen, garden or burial ground, unless condemnation of such property is expressly authorized in its charter or by some provision of this code."

G.S. 160-204 provides as follows: "When in the opinion of the governing body of any city, or other board, commission, or department of the government of such city having and exercising or desiring to have and exercise the management and control of the streets, water, electric light, power, gas, sewerage or drainage systems, or other public utilities, parks, playgrounds, cemeteries, wharves, or markets, open-air or enclosed, which are or may by law be owned and operated or hereafter acquired by such

city or by a separate association, corporation, or other organization on behalf and for the benefit of such city, any land, right of way, water right, privilege, or easement, either within or outside the city, shall be necessary for the purpose of opening, establishing, building, widening, extending, enlarging, maintaining, or operating any such streets, parks, playgrounds, cemetery, water, electric light, power, gas, sewerage or drainage systems, wharves, or other public utility so owned, operated, and maintained by or on behalf of any such city, such governing body, board, commission, or department of government of such city may purchase such land, right of way, water right, privilege, or easement from the owner ·or owners thereof and pay such compensation therefor as may be agreed upon."

G.S. 160-205 provides as follows: "If such governing body, board, commission or department of the government of such city are unable to agree with the owners thereof for the purchase of such land, right of way, privilege, or easement, for the purposes mentioned in the preceding section, or for a site for city hall purposes, condemnation of the same for such public use may be made in the same manner and under the same procedure as is provided in chapter Eminent Domain, article 2; and the determination of the governing body, board, commission, or department of government of such city of the land necessary for such purposes shall be conclusive."

G.S. 40-10 was originally Chapter 61, Section 21, Session Laws of 1852. At the time of the enactment of this statute, municipalities were not included among corporations authorized to condemn land under the provisions of what is now Chapter 40, Article 1, of the General Statutes, to which the limitations set out in G.S. 40-10 specifically refer; whereas the original provisions of G.S. 160-204 and 160-205 were enacted in 1917. These statutes, as subsequently amended, are not limited by the provisions of G.S. 40-10. *Mt. Olive v. Cowan, ante,* 259, p. 263, 69 S.E. 2d 525.

Therefore, it would seem that there is no merit in the interveners' contention to the effect that the City of Raleigh is without power to condemn the Edwards property and erect thereon the proposed water tank, on the theory that it will amount to a taking, in part at least, of the interveners' dwelling property.

It follows from what we have said that by virtue of G.S. 160-204 and 160-205 the governing body of a municipality, for the purpose of erecting an elevated water storage tank as an addition to its water system, has the power, in the exercise of a sound discretion, to acquire by condemnation, if need be, dwelling house properties "either within or outside the city," and this is so irrespective of the provisions of G.S. 40-10 and the related statute, G.S. 40-2 (2).

The decision in *Selma v. Nobles,* 183 N.C. 322, 111 S.E. 543, cited and relied on by the interveners, is distinguishable. There the Town of

Selma was proceeding under its charter as amended by Chapter 116, Private Laws of 1915, which conferred upon the Town the right to condemn land for cemetery purposes, "in the same manner as lands are condemned by railroads and public utility companies, . . ."

The petitioner's contention that this defense may not be joined in this proceeding is without merit. See G.S. 40-16 and also 39 Am. Jur., Parties, Sec. 79, pp. 951 and 952.

However, an elevated water tank is not a nuisance *per se.* Therefore, unless and until the tank is erected, the interveners in no event may be entitled to damages as for nuisance. This being so, the nuisance defense is premature. No subsisting affirmative defense is alleged presently entitling the interveners to damages. Consequently, as to this defense the demurrer should have been sustained, and it is so ordered. *Green v. Road Commission,* 184 N.C. 636, 114 S.E. 819. See also: *Pake v. Morris,* 230 N.C. 424, 53 S.E. 2d 300; *Mitchell v. Barfield,* 232 N.C. 325, 59 S.E. 2d 810. If and when the interveners' right of action thereon accrues, it may be reasserted by petition in the cause.

2. *The question whether the restrictive covenants contained in the deeds to the lots in the subdivision vested in the interveners a property right in the land sought to be condemned which must be paid for.*—This precise question does not seem to have been presented heretofore to this Court for determination, and the decisions from other jurisdictions reflect a contrariety of opinion.

However, the decided weight of authority in other jurisdictions supports the proposition that such a restriction, being in the nature of an equitable servitude, is an interest in land and must be paid for when taken. The theory is that these restrictions impose negative easements on the land restricted in favor of and appendant to the rest of the land in the restricted area, and when a particular parcel thereof is appropriated for a public use that will violate the restrictions, such appropriation amounts in a constitutional sense to a taking or damaging of property of the other landowners for whose benefit the restrictions are imposed. 18 Am. Jur., Eminent Domain, Sec. 157, p. 788; Annotations: 17 A.L.R. 554; 67 A.L.R. 385; 122 A.L.R. 1464.

It is true that such other landowners may not enforce the restrictions against the condemnor, but they are nonetheless entitled to an award of compensation "where, through the exercise of the power of eminent domain, there is a taking or damaging of such property rights. . . ." 18 Am. Jur., Eminent Domain, Sec. 157, p. 788. See *Peters v. Buckner,* 288 Mo. 618, 232 S.W. 1024; *Flynn v. New York, Etc., R. Co.,* 218 N.Y. 140, 112 N.E. 913; *Allen v. Detroit,* 167 Mich. 464, 133 N.W. 317; *Stamford v. Vuono,* 108 Conn. 359, 143 A. 245; *Britton v. School Dist.,* 328 Mo. 1185, 44 S.W. 2d 33; *State ex rel. Britton v. Mulloy,* 332 Mo. 1107,

61 S.W. 2d 741; *Johnstone v. Detroit, G. H. & M. R. Co.,* 245 Mich. 65, 222 N.W. 325; *Allen v. Wayne Circuit Judge,* 159 Mich. 612, 124 N.W. 581; *Ladd v. Boston,* 151 Mass. 585, 24 N.E. 858 (opinion by *Holmes, J.*).

In *Peters v. Buckner, supra,* it was held by the Missouri Court that under the provisions of the State and Federal Constitutions prohibiting the taking of private property for public use without just compensation, where lots in a tract of land were platted and sold by a land company subject to the restriction that the lots should be used only for residential purposes, the rights conferred on the lot owners by such restriction were property rights not to be taken or damaged without just compensation being paid therefor; and that, on condemnation by the city of certain of the lots for the purpose of erecting a schoolhouse thereon, the other lot owners were entitled to compensation for the loss of the easement created by such restriction.

In *Flynn v. New York, Etc., R. Co., supra,* it was held by the New York Court that where a railroad company bought lots in a tract of land which was subject to restrictions, including a prohibition against the erection of any structure for business purposes, and built and maintained thereon an electric railroad, there was a deprivation of property rights entitling the other lot owners in the tract to compensation.

In *Allen v. Detroit, supra,* the Michigan Court held that the erection by a city of a fire engine house on property purchased by it, but restricted to residential purposes, was a taking of private property for public use and the owners of the lots for the benefit of which the restriction was imposed were entitled to compensation. The Court said: "Building restrictions are private property, an interest in real estate in the nature of an easement, go with the land, and a property right of value, which cannot be taken for the public use without due process of law and compensation therefor; . . ."

The decisions representing the minority view rest for the most part on the theory that since all property is held subject to the power of eminent domain, the rights of the Sovereign or condemnor are impliedly excepted from the operation of these restrictive covenants; and that if not so excepted, the condemnor, not being party or privy to the contract creating the covenants, no action for damages will lie against the condemnor. See 18 Am. Jur., Eminent Domain, Sec. 157, p. 788, footnote 20. Thus, in the final analysis the minority view is grounded on the theory that these restrictions, being contractual rights enforceable in equity only between parties in privy, do not constitute an interest in property at all. See Nichols on Eminent Domain, 3d Edition, Vol. 2, Sec. 5.73, pp. 82 and 83.

On the other hand, the majority view rests squarely upon the theory that a negative easement created by a building restriction is a vested interest in land (18 Am. Jur., Eminent Domain, Sec. 157, p. 788), and

this Court has adhered unvaryingly to the principle that a negative ease-
ment of this kind is a vested interest in land.  *McKinney v. Deneen,* 231
N.C. 540, 58 S.E. 2d 107; *Hildebrand v. Telephone & Telegraph Co.,* 219
N.C. 402, 14 S.E. 2d 252; *Charlotte v. Heath,* 226 N.C. 750, 40 S.E. 2d
600 (here it was conceded by all parties concerned that the negative ease-
ments involved were property rights to be condemned and paid for);
*Turner v. Glenn,* 220 N.C. 620, 18 S.E. 2d 197; *Davis v. Robinson,* 189
N.C. 589, 127 S.E. 697; *East Side Builders v. Brown,* 234 N.C. 517, 67
S.E. 2d 489.  See also *Glenn v. Board of Education,* 210 N.C. 525, 187
S.E. 781; *Hiatt v. Greensboro, supra;* Mordecai's Law Lectures, 2d Edi-
tion, p. 557; Thompson on Real Property, Permanent Edition, Vol. 7,
Sec. 3620 through Sec. 3631; Clark, Covenants and Interests Running
with Land, p. 174, *et seq.*

In *Davis v. Robinson, supra,* opinion by *Varser, J.,* it is said: " 'Ease-
ments are classified as affirmative or negative.  Negative easements are
those where the owner of a servient estate is prohibited from doing some-
thing otherwise lawful upon his estate, because it will affect the dominant
estate (mid. p. 598) . . . An easement always implies an interest in land.
It is real property and is created by grant.' (mid. p. 600). . . . *A build-
ing restriction is a negative easement."*  (Italics added.)

In *Turner v. Glenn, supra,* with *Barnhill, J.,* speaking for the Court,
it is said (mid. p. 625) : "The servitude imposed by restrictive covenants
is a species of incorporeal right.  It restrains the owner of the servient
estate from making certain use of the property. *It is an interest in land,*
conveyance of which is within the statute of frauds."  (Italics added.)

Thus, holding as we do that these negative easements are vested prop-
erty rights, it follows by force of natural logic and simple justice that for
the taking of such property just compensation must be paid as in the case
of the taking of any other type of property, and the lack of contractual
privity between the owners and the condemnor is in no sense a determina-
tive factor.

Treating the allegations of the further defense as true, as is the rule
on demurrer (*Hall v. Coble Dairies,* 234 N.C. 206, 67 S.E. 2d 63), we
conclude that the interveners have a vested property right of value in the
restrictions imposed on the lots sought to be condemned and that the pro-
posed use of the property amounts in a constitutional sense to a taking or
damaging of this property right, for which the interveners are entitled
to compensation commensurate with any loss they may sustain.  Art. I,
Sec. 17, of the Constitution of North Carolina; Fifth Amendment of the
Constitution of the United States.

Except as herein modified, the judgment of the court is affirmed.

Modified and affirmed.