W. H. McKINNEY and Wife, LUCY H. McKINNEY, v. THE CITY OF HIGH POINT.

(Filed 30 January, 1953.)

**1. Pleadings § 15—**

A demurrer tests the sufficiency of a pleading, admitting for the purpose the truth of factual averments well stated and such relevant inferences as may be deduced therefrom, but not inferences or conclusions of law.

**2. Same—**

A pleading will be liberally construed upon demurrer with a view to substantial justice between the parties, and every reasonable intendment is to be made in favor of the pleader. G.S. 1-151.

**3. Municipal Corporations § 37—**

The power of a municipality to enact zoning regulations is based upon the power to protect and promote the public health, safety and general welfare.

**4. Municipal Corporations §§ 6, 37—**

The erection by a municipality of a water storage tank in connection with its waterworks system is done by it in its governmental capacity and the city's zoning ordinances do not apply thereto.

**5. Municipal Corporations § 37—City may not be held liable for negligence solely on ground that water tank was maintained in section zoned for residences.**

The complaint alleged that the defendant municipality erected a water storage tank in a section of the city zoned exclusively for residences, and that the construction of the tank was unlawful and in violation of municipal ordinance, and sought to recover damages to plaintiffs' contiguous property on the ground of negligence. Defendant city demurred. *Held:*

The demurrer did not admit the legal conclusion that the construction of the tank was unlawful, and in the absence of any allegation of negligence in the design, construction, maintenance or operation of the tank, the complaint failed to state a cause of action for negligence, and as to such cause of action the demurrer should have been sustained.

**6. Same—**

Since a municipality has the right in the exercise of its governmental function to erect a water storage tank in a section zoned for residences exclusively it may not be held liable, in the absence of statutory provision, for resulting damage to contiguous property upon the theory of a trespass when the tank is properly built and operated.

**7. Same: Eminent Domain § 3—**

Where a municipality, in the exercise of a governmental function, erects a water storage tank in a section zoned for residences exclusively, it may be held liable in damages for the depreciation in value of contiguous property incident to the maintenance of such tank, since to that extent it amounts to a "taking" of property for which compensation must be paid. Constitution of North Carolina, Article I, Sec. 17; Fifth Amendment to the Constitution of the United States.

**8. Same—Speculative damage incident to taking of property may not be recovered.**

Plaintiffs' complaint alleged that defendant municipality erected a water storage tank across the street from property owned by plaintiffs in a section of the city zoned for residences exclusively, and that the maintenance of the tank materially depreciated the value of their property. *Held:* The complaint states a cause of action in favor of plaintiffs to recover compensation as for the taking of property, but allegations to the effect that the maintenance of the tank created a constant hazard to plaintiffs' property from airplanes, windstorms, tornadoes, cyclones and electrical storms and danger from the leaking or bursting of the tank, relate to matters too contingent, uncertain and speculative to be considered as elements of damage.

**9. Municipal Corporations § 37: Nuisances § 3a—**

The maintenance of a water storage tank by a municipality in a section zoned for residences exclusively cannot give rise to a cause of action for a nuisance in behalf of the owners of contiguous property, since such tank is not a nuisance *per se* and the municipality has the right to maintain it at the place in question in the exercise of a legitimate and necessary governmental function, notwithstanding its zoning regulations.

**10. Pleadings § 19c—**

If a complaint is good in any respect or to any extent, it cannot be overthrown by demurrer.

Appeal by defendant from *Patton, Special Judge,* June Term, 1952, of Guilford (High Point Division). From a judgment overruling its demurrer to the amended complaint the defendant appeals. Modified and affirmed.

Civil action to recover damages to plaintiffs' property alleged to have been caused by the erection of an elevated water tank on property across the street from plaintiffs' property, in violation of the defendant's zoning laws, as to the use of the property, and the height of the structure, allegedly constituting a nuisance and a taking of plaintiffs' property for a public use, and was actionable negligence, resulting in diminution of the plaintiffs' property.

The plaintiffs in their amended complaint allege in substance:

(1) That the plaintiffs are residents of the City of High Point, Guilford County, North Carolina; and that the defendant is a municipal corporation, created, organized and existing under the laws of the State of North Carolina.

(2) That the plaintiff, W. H. McKinney, owned prior to the erection of the water tank, and still owns, several lots located at the southeast corner of Salem Street and Bridges Street in the City of High Point, having a frontage of 123½ feet on Salem Street and a frontage of 97½ feet on Howard Street. That the plaintiff Lucy H. McKinney has an inchoate dower right in said property. There is a seven-room house on said property in which the plaintiffs have resided for many years, making improvements thereto from time to time.

(3) Paragraph 4 of the amended complaint reads as follows: "That the section in which plaintiffs' property is located was for many years, and is now, zoned as "Residence 'A' District," as defined in "The Code of the City of High Point, North Carolina, 1950," Chapter 24, Sections 24.7, 24.26 and 24.45 (formerly Chapter O, Art. II of the 1945 Code Ordinances of the City of High Point); that said ordinance specifies the type and height of buildings and structures that can be constructed or erected in said Residence "A" District, and specifically excludes all other types of buildings or structures; that the construction or erection of a public utility is not enumerated among the list of buildings and structures that can be constructed or erected in said Residence "A" District; that elsewhere in said Code the erection of a municipal utility in any district is provided for, but only after referral to, and report by, the Board of Adjustments, and according to the method prescribed therein; that the matter of the erection of the water tank described below was not referred to the Board of Adjustments, nor was the procedure outlined in the said ordinance followed, and same was wrongfully and unlawfully erected in its present location; that said water tank further greatly exceeds the height requirements of said ordinance; that said ordinance was in full force and effect prior to the erection of said hereinafter described water tank, was in force and effect when same was erected, and is still in force and effect; that said ordinance is made a part hereof as fully as if set forth verbatim herein."

(4) In the spring of 1950 the defendant notified the citizens of High Point that it intended to build a large water tank in the northeast section of the city; that it had under consideration several sites for the location of said tank, including the present location thereof. That public meetings were held by the city council to afford citizens in the areas to be affected an opportunity to oppose the construction of said tank in their neighborhood. The plaintiffs and other citizens in their neighborhood appeared at said meetings, and opposed the erection of a proposed tank in their vicinity.

(5) The defendant on 1 August, 1950, purchased property on the east side of Howard Street between Farlow and Bridges Streets for the location of a 1,000,000 gallon capacity storage tank, and on 15 August, 1950, authorized and let the contract for the erection of said tank. The building and the erection of the tank was completed in August, 1951. The tank is approximately 184 feet high and is supported by nine large steel columns imbedded in concrete. It is surrounded by a high wire fence, and towers high above any other buildings in the section where it is located. The maximum height of a public building permitted by ordinance is 60 feet.

(6) The rear of plaintiffs' property is located across Howard Street from the water tank, and stands in the shadow of the tank. The neighborhood is well settled with homes; a large, modern church has recently been built in said community. That until the erection of the tank this district was used as a Residence "A" District.

(7) Paragraph 9 of the amended complaint reads as follows: "That the erection and maintenance of said water tank and its enclosure in said location by the defendant has materially damaged the said property of the plaintiffs; that it has tended to cheapen said property by placing nearby a structure out of keeping and harmony with the other buildings and structures located in said section, and particularly the property of the plaintiffs; that the erection of said tank, in violation of said ordinance, has tended to industrialize a purely residential section, and has tended to defeat the very purpose for which said section or district was zoned by the defendant; that said tank constitutes a constant hazard to plaintiffs' property from airplanes, windstorms, tornadoes, cyclones and electrical storms; that there is a constant hazard to plaintiffs' property from the danger of said tank leaking or bursting; that it is painted a bright silver color so that the reflection of the rays of the sun upon it causes a continuous and blinding glare, and said tank constitutes a nuisance; that it further constitutes a wrongful and unlawful taking or appropriation of plaintiffs' property; that the plaintiffs have been damaged by the unlawful, careless, negligent and arbitrary acts of the defendant in the erection of the water tank and its enclosure herein described in

close proximity to plaintiffs' property; by reason of the wrongful, unlawful and negligent erection of said water tank and its enclosure the plaintiffs have been damaged in the sum of $7,500.00."

(8) Pursuant to the city's charter the plaintiffs gave notice in writing on 19 September, 1951, to the city council of the defendant of their claim for damages on account of the erection of the tank stating the date and place of infliction of their alleged damage, the manner or character of the damage and the amount of the damages claimed. The defendant has ignored said claim. Pursuant to the defendant's charter the plaintiffs have waited more than thirty days from the time of presentation of their claim to commence action.

The court allowed the plaintiffs to file an amended complaint, and the defendant agreed that its demurrer should be heard upon the amended complaint instead of upon the original complaint.

The defendant sets forth five grounds in its demurrer:

1. The complaint does not state facts sufficient to constitute a cause of action. 2. That the water tank erected by the defendant City of High Point in the portion of the City in which the land of the plaintiffs is located, as referred to in the complaint, was designed and erected within the governmental function of the City of High Point for the sole purpose of supplying adequate water and water pressure to the citizens and businesses located in the said city and for fighting fires in the said city, particularly in the section in which the land of the plaintiffs is located. 3. That at no place in the complaint is it alleged that there has been any physical invasion or taking of the property or property rights of the plaintiffs and that any claim of the plaintiffs for damage is merely fanciful or imaginary and that such injury, if any, is therefore *damnum absque injuria* for which no recovery can be obtained. 4. That all allegations of the complaint are speculative and the conclusions imaginary. 5. The allegations are contrary to known and scientific facts and do not support the conclusions reached.

*James B. Lovelace and Frazier & Frazier for plaintiffs, appellees.*

*Grover H. Jones and Brooks, McLendon, Brim & Holderness for defendant, appellant.*

PARKER, J. On the demurrer we take the case as made by the amended complaint. The office of a demurrer is to test the sufficiency of a pleading, admitting, for the purpose, the truth of factual averments well stated and such relevant inferences as may be deduced therefrom, but it does not admit any legal inferences or conclusions of law asserted by the pleader. We are required on a demurrer to construe the complaint liberally with a view to substantial justice between the parties, and every

reasonable intendment is to be made in favor of the pleader.  G.S. 1-151; *Barber v. Wooten,* 234 N.C. 107, 66 S.E. 2d 690; *Cathey v. Construction Company,* 218 N.C. 525, 11 S.E. 2d 571; Joyner v. Woodard, 201 N.C. 315, 160 S.E. 288.

Numerous courts, including the United States Supreme Court, have sustained zoning ordinances and laws for the purpose of regulating and restricting the character, location and use of buildings in cities, entirely on the substantial grounds that they are reasonably necessary for the purpose of protecting and promoting the public health, safety and general welfare.

"The stabilization, conservation and protection of uses and values of land and buildings . . . constitute fundamental purposes of zoning, reasonably related to the public welfare. 'Not the least of its (zoning) purposes is to stabilize property uses.'" McQuillin Mun. Corp. 3rd, Vol. 8, Zoning, Sec. 25.25, "Zoning ordinances involve a reciprocity of benefit as well as of restraint. . . . The theory of zoning is one of balancing public against private interests." *Ibid.,* Sec. 25.40.

Vast property rights are affected by zoning regulations. Metzembaum states in his "The Law of Zoning," p. 136 (1930) that a pamphlet to be issued in 1930 by the United States Government will show almost forty million people in the United States living within zoned municipalities. Many millions have been added since. He further states that in 1919 England made zoning mandatory upon every city which, on 1 January, 1923, would have twenty thousand or more people. It is interesting to note that zoning of certain areas, protection of streets against encroachments and building height limitations were not unknown to the Roman Law. Thomas Adams "Outline of Town and City Planning" (1935), Ch. 1, p. 53. "Use zoning is almost coeval with the English Colonization of the United States. In the first year of the first royal governor of the province of Massachusetts Bay Colony, in the reign of William and Mary, a law was passed forbidding certain noxious or 'nuisance' industries from carrying on any business in any district not specifically designated for such use by the selectmen of the town jointly with two or more justices of the peace . . . This law applied to Boston, Salem and. Charleston, and to any other market town in the province. . . . 'This act, which is still law, is undoubtedly,' says Thomas Adams 'the first example of "use zoning" in America.'" McQuillin Mun. Corp., 3rd Ed., Vol. 8, Article Zoning, Sec. 25.03, Note 15.

On 1 August, 1950, defendant authorized the purchase of property for the location of an elevated water tank in a section it had zoned as a "Residence 'A' District"; on 15 August, 1950, it let the contract for its construction; and the work was completed in August, 1951. In the Code of the city the erection of a municipal utility in any district of the city is

provided for, but only after referral to, and report by the Board of Adjustments, and according to the method set forth in the Code. The city did not follow this procedure. The question arises whether the zoning regulations of the defendant applied to the erection, maintenance and operation of an elevated water tank such as this is, which was deemed necessary by the defendant having authority over a given field of public administration. Counsel in their briefs have cited us no authority on this question. After a diligent search in our Reports we are unable to find a case that has decided it. It appears to be a question of first impression with us. The plaintiffs allege in their amended complaint that the erection of the tank by the defendant was wrongful and unlawful. That allegation is a conclusion of law which is not admitted by the demurrer. *Cathey v. Construction Company, supra.*

The defendant contends that the construction and maintenance of this tank was a governmental function on its part, and that the rule of non-liability in such cases applies. The plaintiffs contend that the construction and maintenance of the tank was a corporate function, and that the defendant is liable for any negligence of its agents in performing duties of a corporate character in the management of its property.

*Mr. Justice Denny,* speaking for the Court in a lucid opinion in *Rhodes v. Asheville,* 230 N.C. 134, at pages 137 and 138, 52 S.E. 2d 371, says: "Since this Court handed down the decision in 1903, in the case of *Fawcett v. Mt. Airy,* 134 N.C. 125, 45 S.E. 1029, the construction, maintenance and operation of a water and light plant by a municipality, has been held to be a necessary governmental expense. Even so, it has been uniformly held that, except as to certain exempted services, such as furnishing water to extinguish fires, *Klassette v. Drug Co.,* 227 N.C. 353, 42 S.E. 2d 411; *Mabe v. Winston-Salem,* 190 N.C. 486, 130 S.E. 169; *Mack v. Charlotte,* 181 N.C. 383, 107 S.E. 244; G.S. 160-255, a municipality in operating a water or light plant or other business function does so in its corporate or proprietary capacity. *Fisher v. New Bern,* 140 N.C. 506, 53 S.E. 342; *Harrington v. Wadesboro,* 153 N.C. 437, 69 S.E. 261; *Terrell v. Washington,* 158 N.C. 281, 73 S.E. 888; *Woodie v. Wilkesboro,* 159 N.C. 353, 74 S.E. 924. . . . We have cited the above decisions to show that a municipality may in certain instances, be liable in tort even though it may be engaged in a governmental function; and likewise may be held liable when engaged in a proprietary function which is considered such a *public necessity* that its activity is held to be for *a public purpose* and a necessary governmental expense."

The following cases fall on the governmental side of municipal power: *Price v. Trustees,* 172 N.C. 84, 89 S.E. 1066, L.R.A., 1917 A, 992; *Parks-Belk Company v. City of Concord,* 194 N.C. 134, 138 S.E. 599; *James v. Charlotte,* 183 N.C. 630, 112 S.E. 423.

Now in respect to the question raised above. "Municipalities are sometimes regarded as subject to the prohibitions or restrictions of their own zoning ordinances, in so far as the property is being used in the performance of a proprietary or corporate function, as distinguished from a governmental function, the use of property for which is ordinarily held not to be within the prohibitions or restrictions of a zoning ordinance." 58 Am. Jur., Zoning, Sec. 120. "The need of a public building in a certain location ought to be determined by the federal, state, or municipal authority, and its determination on the question of necessary or desirable location cannot be interfered with by a local zoning ordinance." Bassett "Zoning" (1940), Public Bldgs., p. 31.

In *Sunny Slope Water Company v. Pasadena* (1934), 1 Cal. 2d 87, 33 P. 2d 672, it was held that a city engaged in the distribution and sale of water was not bound by its zoning ordinances in a highly restricted residential area as regarding its right to operate wells and water pumps in the area. The distinction between governmental and proprietary functions was not raised.

In *Decatur Park Dist. v. Becker* (1938), 368 Ill. 442, 14 N.E. 2d 490, it was decided that a park district organized by the Legislature to establish parks and playgrounds was entitled to condemn certain lands for such purposes under its power of eminent domain, notwithstanding the fact that a city zoning ordinance classified such land as "A" residence property.

In *State v. Board of County Commissioners,* 79 N.E. 2d 698 (Com. Pl. Ohio 1947), affirmed 83 Ohio App. 388, 78 N.E. 2d 694 (Ct. of App. Ohio, 1948), it is said "both principle and authority support the view that restrictions in zoning ordinances of municipalities are ineffective to prevent the use of land by a county for the public purpose for which it has been appropriated." See also *Tim v. Long Branch* (N.J.), 53 A. 2d 164, 171 A.L.R. 320, and Annotation, and *Carroll v. Board of Adjustment of Jersey City* (1951), 15 N.J. Super. 363, 83 A. 2d 448.

A different conclusion was reached in the following three cases: *Taber v. Benton Harbor* (1937), 280 Mich. 522, 274 N.W. 324, holds that a municipality was held bound by its own zoning ordinance concerning the height of buildings and could not erect a water tank tower in violation thereof, where such an act was proprietary in nature. In *O'Brien v. Greenburgh* (1933), 239 App. Div. 555, 268 N.Y.S. 173 (affirmed without opinion in (1935) 266 N.Y. 582), 195 N.E. 210, a municipality was enjoined from erecting a garbage disposal plant in a restricted district in which a zoning ordinance adopted by the town provided that no disposal plant would be permitted, except upon consent of a certain percentage of the property owners. The Court said that such an act is a corporate act as distinguished from a governmental function and in the former capacity

the town is bound equally with all other persons by the terms of its own ordinance. In *Jefferson County v. City of Birmingham* (1951), 256 Ala. 436, 55 So. 2d 196, it was held that the proposed operation of a sewage disposal plant by the county would be a proprietary function and not a governmental function, and therefore the city under its zoning power could prohibit the construction and operation of a sewage disposal plant in a "B" residential district.

The General Assembly of North Carolina at its 1951 session enacted Pub. L. Ch. 1203, codified in G.S. as Sec. 160-181.1, which made zoning regulations applicable to the erection and construction of buildings by the State and its political subdivisions. The act became of full force and effect after its ratification 14 April, 1951. This water tank was in construction when this act was passed.

This Court has said in *Mack v. Charlotte,* 181 N.C. 383, 107 S.E. 244: "The principle upon which a municipality engaged in supplying water to the individual citizen, under contract for profit or pay, must be considered and dealt with as a private owner, applies to the ordinary burdens and liabilities incident to their private business relations, and not to its work for the public generally, such as procuring its water supply and extending it, providing for fire protection and sanitation purposes and the like, for therein the municipality is to be regarded as a governmental agency and, as such, possessing and capable of exercising the powers and privileges conferred upon it by law. *Felmet v. Canton,* 177 N.C. 52. The question was directly presented and same ruling made in *Howland v. Asheville,* 174 N.C. 749; *Harrington v. Greenville,* 159 N.C. 632; *McIlhenney v. Wilmington,* 127 N.C. 146; *Moffitt v. Asheville,* 103 N.C. 237, are in recognition of the same general principle." See also *Pemberton v. Greensboro,* 208 N.C. 466, 181 S.E. 258.

G.S. 130-111 authorizes municipalities to condemn lands for water supply as are necessary for the successful operation and protection of their plants.

"Water-works are public utilities. The power to own or otherwise provide a system of water-works, conferred upon cities, has relation to public purposes, and for the public, and appertains to the corporation in its political or governmental capacity. They are supported at public expense, and are subject to the exclusive control of the city in its governmental capacity, for the convenience, health and general welfare of the city. The city determines the amount of water mains, where to be laid, and the number and location of fire-hydrants. Over these the individual has no control. In the exercise of this political power the city has discretion, with which the courts have no right to interfere." *Asher v. Hutchinson Water, Light & Power Co.,* 66 Kan. 496, 500, 71 Pac. 813, 61 L.R.A. 52.

The complaint does not state the purpose for which the defendant purchased land, and erected the water tank. It is a fair inference that it was erected for the purposes of public health, sanitation, fire protection and selling water for gain to its inhabitants and businesses within the city. Under our former decisions we conclude, and so hold, that the erection of this water tank was done by the defendant in its governmental capacity and that its zoning ordinances did not apply.

The plaintiffs contend that in their amended complaint they have alleged a cause of action for negligence. The plaintiffs have not alleged any negligence in the design, construction, maintenance or operation of this tank; nor that it was constructed, maintained and operated in any way different from similar tanks by other municipalities. The plaintiffs have alleged that the erection of the tank was unlawful and in violation of its zoning ordinance. This is a conclusion of law, which the demurrer does not admit. *Cathey v. Construction Company, supra.* The amended complaint alleges no cause of action for negligence, and as to such cause of action, the demurrer should have been sustained, and it is so ordered. *Parks-Belk Company v. Concord, supra; Rhodes v. Asheville, supra; Broome v. Charlotte,* 208 N.C. 729, 182 S.E. 325.

The defendant having a right to erect and maintain the water tank for the public benefit, in its governmental capacity, is not liable civilly to individuals for injuries resulting therefrom, when properly built and operated, upon the theory of a trespass, in the absence of a statute giving such right. *James v. Charlotte,* 183 N.C. 630, 112 S.E. 423. This does not prevent the right of a recovery of damages for a taking or appropriating, in whole or in part, of property for a public use without due compensation. *Dayton v. Asheville,* 185 N.C. 12, 115 S.E. 827, and cases cited. It is said in *Dayton v. Asheville,* "Public necessity may justify the taking, but cannot justify the taking without compensation. *Platt Brothers v. Waterbury,* 72 Conn. 531. See, also, *Boise Valley Construction Company v. Kroeger,* 28 L.R.A. (N.S.), 968, and note, which contains a valuable collection of the authorities on the subject." To hold otherwise would be in violation of the State and the United States Constitutions. "No person ought to be . . . disseized of his freehold, liberties, or privileges . . . or in any manner deprived of his life, liberty or property, but by the law of the land." N. C. Const., Art. I, Sec. 17. "Nor shall private property be taken for public use without just compensation." U. S. Const., Amend. 5. *Rhodes v. Durham,* 165 N.C. 679, 81 S.E. 938; *Ivester v. Winston-Salem,* 215 N.C. 1, 1 S.E. 2d 88.

"The violation of a statutory provision containing a mandate to do an act for the benefit of another, or the prohibition against the doing of an act which may be to his injury, is generally regarded as giving rise to a liability and creating a private right of action, whenever the other ele-

ments essential to a recovery are present. In the application of such a rule, there is support for the right of real-estate owners to claim and recover damages for any injuries they may sustain by reason of depreciation in the value of their property caused by a violation of zoning laws." 58 Am. Jur., Zoning, Sec. 191.

In *Sapiro v. Frisbie* (1928), 93 Cal. App. 299, 270 P. 280, it was held that property owners in a residence district were entitled to recover damages from persons erecting an undertaking establishment in the district in violation of a zoning ordinance enacted pursuant to the Stockton City Charter. The Court said: "The right of the plaintiffs to claim and recover damages for any injuries which they may have sustained . . . by reason of any depreciation in the value of their real property caused by the acts with the commission of which the complaint charges the defendants, seems to us to be a proposition which is not subject to serious controversy." *Slone v. Texas Company,* 180 N.C. 546, 105 S.E. 425, 12 A.L.R. 1297; *Leathers v. Blackwell Durham Tobacco Company,* 144 N.C. 330, 57 S.E. 11, 9 L.R.A. (N.S.) 349, are cases holding there is a right of action predicated upon a violation of statutory duty. See also 50 Am. Jur., Statutes, Sec. 584.

The amended complaint does not state how far the tank is located from the plaintiffs' property in feet, but says their property is located just across Howard Street from it. The amended complaint alleges that the construction and maintenance of this tank in a zoned Residence "A" District has cheapened, and materially damaged their property; that the maximum height of a public or semi-public building permitted by the defendant's ordinance is 60 feet and this tank is 184 feet high; that their home stands in the shadow of it; that it is painted a bright silver color so that the reflection of the rays of the sun upon it causes a continuous and blinding glare; that the construction, maintenance and operation of the tank has defeated the purpose for which the section was zoned. These allegations allege a taking of plaintiffs' property for which compensation must be paid for any loss the plaintiffs may have suffered under the fundamental law of the State and Nation.

In *Raleigh v. Edwards,* 235 N.C. 671, 71 S.E. 2d 396, the proposed water tank was to be erected on lands adjoining the home site of the interveners in a development subject to covenants restricting the use of the land to private dwelling purposes alone. It was held that this was a taking of vested interests in property for which the owners are entitled to compensation for any loss sustained.

The allegations in the amended complaint that said tank constitutes a constant hazard to plaintiffs' property from airplanes, windstorms, tornadoes, cyclones and electrical storms; that there is a constant hazard to plaintiffs' property from the danger of said tank leaking or bursting seem

to be too uncertain, contingent and speculative to be considered as an element of damages, and are not susceptible of the exactness of proof required to fix a liability. The law in respect to such damages is set forth in *Johnson v. R. R.*, 184 N.C. 101, 113 S.E. 606; *Bowen v. King*, 146 N.C. 385, 59 S.E. 1044; *Bryant v. Carrier*, 214 N.C. 191, 198 S.E. 619.

The complaint sets forth a cause of action for the taking of plaintiffs' property, and we so hold.

The plaintiffs contend that they have alleged a cause of action for a nuisance. "An elevated water tank is not a nuisance *per se.*" *Raleigh v. Edwards, supra.* "Its situation, environment and manner of operation determine its status." *Pake v. Morris*, 230 N.C. 424, 53 S.E. 2d 300, citing in support of the statement *Webb v. Chemical Co.*, 170 N.C. 662, 87 S.E. 633; *Redd v. Cotton Mills*, 136 N.C. 342, 48 S.E. 761. The plaintiffs have not alleged in their complaint that the defendant was in any way negligent in the design, construction, maintenance or operation of the tank; nor have they alleged that it is in any way different from elevated water tanks constructed, maintained or operated by other municipalities. The defendant acting in its governmental capacity constructed this tank. It is a legitimate and proper and necessary governmental function of the defendant. "A legitimate and proper business enterprise located in a town, which enterprise is not in itself a nuisance, is subject to no liability to adjacent property owners, or others in the vicinity, for the ordinary, careful and reasonable operation of the business. It is the negligent and unreasonable operation and maintenance that produces the nuisance, and the nuisance thus created imposes liability." *King v. Ward*, 207 N.C. 782, 178 S.E. 577. *Mr. Justice Barnhill* succinctly and clearly says for the Court in *Clinton v. Ross*, 226 N.C. 682, at p. 690, 40 S.E. 2d 593: "A tobacco sales warehouse is a lawful enterprise and the medium through which the farmers of the State market one of its largest income-producing crops. . . . In no sense is it a public or private nuisance. The court below found that the warehouse of the defendant is operated in the same manner as are other warehouses of like kind throughout the tobacco belt. When so conducted there is nothing inherent in the manner of operation which constitutes a menace to the general welfare, health, morals or safety of the community."

The amended complaint does not state a cause of action for a nuisance, and as to such allegations the demurrer should have been sustained, and we so hold.

If a complaint is good in any respect or to any extent, it cannot be overthrown by a demurrer. *Byers v. Byers*, 223 N.C. 85, 25 S.E. 2d 466.

Except as herein modified, the judgment of the court is affirmed.

Modified and affirmed.