A. E. HOLTON AND MARY E. HOLTON v. NORTHWESTERN OIL
COMPANY, INCORPORATED. ·

(Filed 9 December, 1931.)

1. **Trial D a—On motion of nonsuit all the evidence is to be considered in the light most favorable to the plaintiff.**

Upon defendant's motion as of nonsuit all the evidence, whether offered by the plaintiff or elicited from the defendant's witnesses, is to be considered in the light most favorable to the plaintiff, and he is entitled to the benefit of every reasonable intendment thereon and every reasonable inference therefrom. C. S., 567.

2. **Nuisance A b—Operation of gasoline filling station held not to be a nuisance under the evidence in this case.**

A properly constructed gasoline filling station, built under permit from the proper municipal authorities, and operated in the usual manner is not a nuisance *per se* and may not be abated because of the usual escape of gasoline odors into the atmosphere, causing mere occasional inconvenience to the plaintiff in the enjoyment of his home on adjacent property.

3. **Same—Disorderly conduct at filling station held not sufficient ground to abate its operation as a nuisance.**

Disorderly conduct at a filling station within the limits and police control of an incorporated town may be controlled by the proper municipal authorities and the filling station will not be abated as a private nuisance on the complaint of an owner of adjacent property.

4. **Same—Operation of filling station will not be abated as a nuisance because natural flow of water therefrom was upon plaintiff's land.**

A properly constructed and operated gasoline filling station which also sells soft drinks from an ice-box kept therein may not be abated as a private nuisance because of the natural flow of water upon the lower lands of the plaintiff, the lower lands being obliged to receive the natural flow of surface water, and the owner thereof being required, if necessary, to collect the water in a ditch and carry it off to a proper outlet.

STACY, C. J., dissents.

APPEAL by plaintiffs from *MacRae, Special Judge,* at May Term, 1931, of YADKIN. Affirmed.

This is an action brought by plaintiffs against defendant for damages for maintaining a nuisance and for the abatement thereof.

The evidence on the part of plaintiffs is to the effect that they own about two acres of land in the town of Yadkinville, N. C., which has a population of about 590 inhabitants. On the northeast corner of this lot they have a two-story frame dwelling-house with seven rooms and a porch extends all around the east and north sides. This has been the home of plaintiffs, who are man and wife, for some twenty years. The house is

located on the south side of the old sand-clay road, and faces a street running east and west. This road was changed and relocated when the North Carolina Highway Commission hard-surfaced the same leading from Yadkinville to Brooks Cross-roads. The change in the road and relocation of same left a strip of land, between the old sand-clay and new hard-surfaced road, which is the property of Dr. Marler. The defendant built a filling station on this strip of land, which is about 65 feet from plaintiffs' home and across the old sand-clay road, and faces on the new hard-surfaced road and northeast corner of the triangle strip which is 13 feet by 40 to 50 feet. The filling station is built of brick about 10 feet by 15 feet, ordinary gas pump made of concrete 8 feet high, standing open, gas stored in top. The floor is of concrete, the roof is of tile and the floor on which the pumps stand is concrete. The tanks are modern up to date and are put under the ground and buried in the ground. The two pumps are modern up to date in every respect. The defendant got a permit to build the filling station from the commissioners of the town of Yadkinville. There were several filling sations in the town of Yadkinville with tanks under the sidewalk and pumps out in the open. Another gasoline pump was the other side of plaintiffs' home, and east of this filling station, and as near plaintiffs' home. It was where the county kept gas and oil stored, and served county trucks.

A roller mill is back of plaintiffs' house, noise from the mill can be heard to plaintiffs' home and the filling station. A lumber plant is near plaintiffs' home, in which there is a saw and planing machine. The noise from these can be heard at plaintiffs' residence and at the filling station when the planing machine is in operation. There is a barn in which livestock is kept about 800 feet from plaintiffs' residence and on their premises. Dr. Marler's office is directly opposite this filling station and north of it. His home is a little northwest. It is about 500 feet from this filling station to Logan's garage. There are only two residences below Logan Motor Company, and this filling station. Automobiles are stored in Logan Motor Company, and ho sells gas and oil. There are 3 tanks there.

Plaintiffs have an ice-box at their home, it drains into a chicken trough, where chickens drink. It was in evidence that the odor of gas, when there was a draft from the filling station, could be smelt in plaintiffs' home, when they filled cars and at other times. The odor was stronger when the tanks were filled with the big trucks. That their home was lower than the filling station and the drainage flowed into a drain ditch. An ice-box was kept along the west end of the filling station house, it drained down towards plaintiffs' home. A barrel of water was kept at the filling station. The water ran down into a little ditch, which

pop bottles dam up, and if it overflowed it ran down across plaintiffs' yard beside the well. Loud talking at the filling station most of the time, stayed open often until midnight and sometimes day and night. One night some boys were cursing and trying to fight. At one time the operator was drunk. The building covered up the sidewalk.

Mrs. A. E. Holton, one of plaintiffs, on cross-examination, testified: "I think we have a chief of police in Yadkinville, did not send for him. Did not send for sheriff; have never gone to the sheriff, his deputies, or any police officer about any of the circumstances, and have never been to any of the officers of the Northwestern Oil Company about any conditions that existed there and asked them to remove it."

J. L. Crater, for plaintiff, testified: "I am clerk of the Superior Court of Yadkin County; and a brother-in-law of the plaintiff. He has owned that property twenty years. (Witness draws diagram showing location of the residence, business houses, garages, filling stations, churches, etc.) I pass up that street by the filling station. I know it is operated in the day time and I have known it to be open at night when I came down town. I just saw some water there on the ground at the rear of the filling station a few times in passing. I didn't detect any odor of any kind. Just what I have seen would not have much effect on the value of the Holton property. I don't think what I have seen and heard at the filling station *would have any effect on the value of the property of Mr. Holton.* The roller mill is situated in the rear of the Holton lot. The broom factory is west of the roller mill. There are only two residences between Logan's garage and the defendant's station. I passed by the filling station two or three times a day."

*Williams & Reavis for plaintiffs.*
*Folger & Folger for defendant.*

CLARKSON, J. At the close of plaintiffs' evidence the defendant made a motion in the court below for judgment as in case of nonsuit. C. S., 567. This motion was sustained, and in this we can see no error.

It is the well settled rule of practice and accepted position in this jurisdiction that, on a motion to nonsuit, the evidence which makes for the plaintiff's claim and which tends to support his cause of action, whether offered by the plaintiff or elicited from the defendant's witnesses, will be taken and considered in its most favorable light for the plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom.

The principle applicable in this action is set forth in Vol. 1, Wood on Nuisances (3d ed.), sec. 496, at pp. 677-8, as follows: "By an atmosphere free from artificial impurities is meant, not air as free and pure

as it naturally is, entirely devoid of impregnation from artificial cause, but an atmosphere as free and pure as could reasonably be expected, in view of the location and its business. If the strict rule applicable to natural rights should be applied, it would seriously disturb not only the business, but also the moral and social interests of society. Therefore the law relaxes the strict rigor of the rule, and does not recognize every business or use of property as a nuisance that imparts a degree of impurity to the air, for if such were the case, towns could not be built, nor life in compact communities tolerated, and even the *ordinary* uses of property would be seriously interfered with, for in proportion to the spareness or compactness of a population is the air pure or impure. One cannot reasonably occupy a dwelling-house or place of business and use any kind of fuel therein, without imparting more or less of impurity to the atmosphere, and in proportion as these are aggregated in one locality, are these impurities increased; but as these are among the common necessities of life, and absolutely indispensable to its reasonable enjoyment, the law does not recognize them as being actionable inter-ferences with the rights of others, unless exercised in an unreasonable manner, so as to inflict injury upon another unnecessarily. . . . (Sec. 497, p. 679.) The law only deals with *real, substantial* injuries, and such as arise from a wrongful use of property, and will not lend its aid to check one engaged in a lawful pursuit simply because his neighbor is annoyed, or even damaged thereby, unless the use complained of is both in violation of that neighbor's right and unreasonable."

As to what constitutes a private nuisance, we have perhaps as good a definition as elsewhere in Adams' Equity, p. 210: "A private nuisance is an act done, unaccompanied by an act of trespass, which causes a sub-stantial prejudice to the hereditaments, corporeal or incorporeal, of an-other." Burdick's Law of Torts, 4th ed. sec. 420; Bigelow on Torts, 8th ed., 445.

"The term nuisance means literally annoyance; anything which works hurt, inconvenience, or damage, or which essentially interferes with the enjoyment of life or property." 29 Cyc. L. & P., p. 1152. *Cook v. Mebane,* 191 N. C., at p. 6; *Board of Health v. Lewis,* 196 N. C., 641; *Surratt v. Dennis,* 199 N. C., 757; *Swinson v. Realty Co.,* 200 N. C., 276; *Hodgin v. Liberty, ante,* at p. 660-1.

"Automobiles are here to stay, and are now generally used for busi-ness and pleasure, and it is necessary for the convenience of the public that filling stations and garages be established and even in residential sections of cities and towns they are held not to be nuisances *per se. Hanes v. Carolina Cadillac Co.,* 176 N. C., p. 351; *Bizzell v. Goldsboro,* 192 N. C., 348; *Clinton v. Oil Co.,* 193 N. C., 432. In every civilized

country it is well settled, with rare exceptions, that private property cannot be taken for private purposes and private property can only be taken for public purposes upon the payment of just compensation. A gasoline station is not, under the law, *per se* a 'hazard.' It might be to some an 'eye-sore,' but the law does not allow aesthetic taste to control private property, under the guise of police power." *MacRae v. Fayetteville,* 198 N. C., at p. 54.

The law only deals with real, substantial injuries—*De minimus non curat lex.* The law does not recognize nervous particularity.

As to the odor of gasoline from the baby filling station built of brick, 10 feet by 15 feet, with the shift of the wind carrying same to plaintiffs' home, some 65 feet away, and such like odors when tanks are filled and at other times, we cannot hold as a substantial injury.

As to the boys cursing and trying to fight, and at one time the operator drunk, plaintiffs could have stopped this annoyance by calling on the chief of police of the town, or other officer; and also to stop, if defendant did so, the filling up of the little ditch with pop bottles, or the little building encroaching on the side-walk across the sand-clay road 65 feet from plaintiffs' home. In fact, it is the duty of all our citizens and the police of the towns and cities to see that all violations of law are punished.

As to the plaintiffs' home being lower than the filling station and the drainage from the filling station in that direction: In *Porter v. Durham,* 74 N. C., at p. 779, the law as stated is as follows: "It has been held that an owner of lower land is obliged to receive upon it the surface water which falls on adjoining higher land, and which naturally flows on the lower land. Of course when the water reaches his land the lower owner can collect it in a ditch and carry it off to a proper outlet so that it will not damage him." *Winchester v. Byers,* 196 N. C., at p. 384; *Sykes v. Sykes,* 197 N. C., 37; *Bonapart v. Nissen,* 198 N. C., 180.

The authorities of the town of Yadkinville gave defendant a permit to build the filling station, it goes without saying that they could not grant permission to create a nuisance. The gasoline station was not a nuisance *per se.* We cannot hold on the entire evidence that the matters complained of were such real, substantial injuries as give the plaintiffs a cause of action for nuisance. The human family ordinarily does not find the simple life in the thickly settled towns and cities, therefore when the matters complained of are such as are common and usual, and no unreasonable and unnecessary injuries are inflicted, the law does not interfere. The judgment below is

Affirmed.

STACY, C. J., dissents.