T. CURTIS ANDREWS AND CATHERINE ANDREWS v. T. B. ANDREWS.

(Filed 30 June, 1955.)

1. **Hunting and Fishing § 4—Maintenance of pond with bait and lame wild geese may constitute nuisance per accidens.**

The allegations of the complaint were to the effect that the defendant constructed and maintained a pond on his land, within 400 feet of plaintiffs' property, and kept bait and lame wild geese thereon for the purpose of attracting wild geese, that as a result thereof wild geese were attracted to the pond and returned to the pond each winter in increasing numbers, that defendant knew the nature of wild geese, and that they would return to the same pond each winter with their young and with additional geese, and that the wild geese used the pond as a base, and foraged out on the adjacent land of plaintiffs, destroying plaintiffs' grain crops, and further that defendant persisted in maintaining the condition after repeated warnings by plaintiffs of the damage to their crops by the geese. *Held:* The complaint is sufficient to state a cause of action based upon defendant's maintenance of a private nuisance *per accidens*, and judgment sustaining defendant's demurrer to the complaint for failure to state a cause of action is reversed.

2. **Nuisance § 1—**

An improper use of one's property which results in injury to the land, property or rights of another, constitutes in law a private nuisance under the maxim *sic utere tuo ut alienum non laedas.*

3. **Same—**

A private nuisance *per se* is an act, occupation or structure which is a nuisance at all times or under any circumstances or surroundings; a private nuisance *per accidens* is one which constitutes a nuisance by reason of its location or the manner in which it is constructed, maintained or operated.

**4. Same—**

> Negligence and nuisance are separate torts, and private nuisances *per accidens* may exist without the element of negligence, and are in fact usually intentionally created or maintained.

PARKER, J., dissenting.

APPEAL by plaintiffs from *Clarkson, J.,* November 1954 Term, RICH-MOND Superior Court.

This is a civil action instituted on 22 October, 1954, in which the plaintiffs ask for a restraining order and damages for the causes set forth in the following complaint:

"The plaintiffs, complaining of the defendant, say and allege:

"1. That the plaintiffs are residents of Richmond County, North Carolina, and are owners in possession of the following described tract of land:

"All that certain piece, parcel or tract of land situate, lying and being in Steele's Township, Richmond County, N. C., on both sides of the River Road about one mile east of Mangum, bounded on the east by the lands of John C. Matheson, the lands of W. C. Lisk, the lands of J. H. LeGrand and the lands of E. J. Haywood; on the north by the lands of T. B. Andrews; on the south by the Pee Dee River and on the west by the lands of T. B. Andrews and the estate lands of D. N. Currie, containing 449.2 acres, more or less.

"The above described lands were purchased by the plaintiffs by warranty deed dated January 11, 1945, and recorded in Book 267 at page 163 in the office of the Register of Deeds for Richmond County, N. C., reference to which is made for the purpose of incorporating that said deed herein the same as if set forth herein.

"2. That the defendant is a resident of Richmond County, N. C., and owns a tract of land situate in Richmond County, N. C., adjoining the plaintiffs' lands on the east and west.

"3. That since the purchase of the land described in paragraph 1 of the complaint in 1945, the plaintiffs have lived thereon and have their home thereon; that they have earned their living thereon by raising livestock and farming; that this farm is their only source of income.

"4. That a large portion of the plaintiffs' farm land borders on lands owned and occupied by the defendant; that a large portion of the plaintiffs' land which borders that of the defendant has been annually planted in grain crops since 1945; that said crops have to be planted in the fall months and mature in the spring of the following year.

"5. That prior to 1949 the plaintiffs' crops and fields were never molested or damaged in any way by wild geese or any other wild fowl; that in the year 1949 the defendant, at a point about 400 feet from the

border line between the property of the plaintiffs and the property of the defendant, excavated springs of water which were situate on his land and created at that point an artificial pond containing about three and one-half acres of stagnate water. The said pond is of little actual value to the defendant's land.

"6. That during the winter of 1951-1952 the defendant placed lame wild geese on the said pond, and placed food and bait on the pond and on the banks thereof, at regular intervals, for the purpose of attracting wild geese to the pond and the surrounding area. That as a direct result of the defendant's building and maintaining the pond near the plaintiffs' lands, placing food and lame wild geese thereon for the purpose of attracting wild geese, wild geese in large numbers immediately came to the pond, but instead of staying on the pond, used the pond as a base from which to set upon and destroy plaintiffs' crops and fields as hereinafter alleged.

"7. That between the months of October 1951 and June 1952, approximately 200 wild geese, as a direct result of the acts of the defendant heretofore complained of, used the defendant's pond as their winter home, but instead of staying on the pond, used the pond as a base from which to set upon and destroy plaintiffs' crops and fields. That during the period from October 1951 to June 1952, the defendant's pond, lame wild geese and bait proximately caused about 200 wild geese to be attracted daily to the plaintiffs' fields and said wild geese destroyed 1½ acres of plaintiffs' matured corn; that the fair market value of the corn destroyed was $48.00; that the defendant's maintaining the pond, lame wild geese and bait near the plaintiffs' land proximately caused and directly resulted in the plaintiffs suffering damages through loss of their corn in the amount of $48.00, between the months of October 1951 and June 1952.

"8. That between the months of October 1952 and June 1953 approximately 1,200 wild geese, as a direct result of the acts of the defendant heretofore complained of, used the defendant's pond as their winter home, but instead of staying on the pond, used the pond as a base from which to set upon and destroy plaintiffs' crops and fields. That during the period from October 1952 to June 1953 the defendant's pond, lame wild geese and bait proximately caused about 1,200 wild geese to be attracted daily to the plaintiffs' fields and said wild geese destroyed 60 bushels of plaintiffs' matured corn; that the fair market value of the destroyed corn was $105.00; that the defendant's maintaining the pond, lame wild geese and bait near the plaintiffs' land proximately caused and directly resulted in the plaintiffs suffering damages through loss of their corn in the amount of $105.00 between the months of October 1952 and June 1953.

"9. That between the months of October 1953 and June 1954, approximately 3,000 wild geese, as a direct result of the acts of the defendant heretofore complained of, used the defendant's pond as their winter home, but instead of staying on the pond, used the pond as a base from which to set upon and destroy the plaintiffs' crops and fields. That during the period from October 1953 to June 1954, the defendant's pond, lame wild geese and bait, proximately caused about 3,000 wild geese to be attracted daily to the plaintiffs' fields and said wild geese destroyed 400 bushels of the plaintiffs' wheat, the fair market value of which was $1,036.80; destroyed seven acres of the plaintiffs' pasture grass, the fair market value of which was $100.00; destroyed 140 bushels of plaintiffs' barley, the fair market value of which was $154.00; destroyed 75 bushels of plaintiffs' oats, the value of which was $52.50; that the defendant's maintaining the pond, lame wild geese and bait near the plaintiffs' land, proximately caused and directly resulted in the plaintiffs suffering damages through loss of his crops as alleged in the sum of $1,343.30.

"10. That plaintiffs are informed and believe the nature of wild geese, which is known to the defendant, is that they migrate from the north in the fall months and locate at ponds where shelter, food and other geese are located or lame geese maintained; that said geese spend the winter at the pond and feed on the surrounding country side, particularly on cultivated crops; that in the spring they migrate north again, raise young geese, and return to the same pond with their young and additional geese to spend the winter, so long as shelter, other geese, and food are provided at the pond. That each year more and more wild geese return to the ponds where they are sheltered; that the defendant knew or should have known this before building his pond.

"11. That each year more and more wild geese are being attracted to plaintiffs' fields by the defendant's pond, lame wild geese and food; that the defendant is under a duty to the plaintiffs to use his property in such manner as not to interfere with the plaintiffs' use and enjoyment of their lands.

"12. That the pond, the lame wild geese and bait kept on the pond by the defendant, constitute a nuisance to the plaintiffs' property in that their proximity to the plaintiffs' fields directly results in large numbers of wild geese being attracted to the plaintiffs' fields and crops; that the defendant, by maintaining said pond, bait and lame wild geese, as alleged, has proximately caused the plaintiffs damages in the sum of $1,536.30, for which said sum the plaintiffs are entitled to judgment against the defendant; that each year more and more wild geese are attracted by the defendant's pond, bait and wild geese, to the plaintiffs' fields; that unless the defendant is restrained from maintaining the said

pond, lame wild geese and bait, the plaintiffs will be permanently and irreparably damaged.

"13. That about October 1, 1954 the defendant was still maintaining the said pond and lame wild geese and about that date began placing food on the pond; that during the period between October 1, 1954 and October 20, 1954 about 400 wild geese had been attracted to the pond and are again setting upon and destroying the plaintiffs' crops.

"14. That the plaintiffs are informed and believe the nature of wild geese is such that if the pond, bait and lame wild geese were not maintained by the defendant on his pond, the said wild geese would not be attracted to the plaintiffs' fields and destroy their crops. That the defendant knew or should have known, before constructing the said pond at the location stated, placing lame wild geese thereon and bait thereon, that large numbers of wild geese would be attracted to the plaintiffs' fields and destroy plaintiffs' crops.

"15. That the plaintiffs have repeatedly warned the defendant of the damages resulting from the defendant maintaining the said pond, lame wild geese and bait, but the defendant only ridiculed and laughed at the plaintiffs and has refused to abate the said nuisance.

"16. That this complaint is made also as plaintiffs' affidavit to be used in all hearings in this matter.

"WHEREFORE, the plaintiffs pray the Court:

"1. That the court issue a temporary injunction restraining the defendant until final judgment in this cause from keeping lame wild geese on the said pond and placing any food or bait on the said pond.

"2. That the defendant be permanently restrained from maintaining the said pond on his land, from baiting any pond on his land and from keeping any lame wild geese on his land or pond.

"3. That the court order the defendant to fill in the pond and destroy the same and that a mandatory injunction issue against the defendant to accomplish this purpose.

"4. That the plaintiffs have and recover of the defendant the sum of $1,536.30 for damages actually sustained with interest.

"5. That the plaintiffs recover the cost of this action as taxed by the Clerk and have and recover such further relief as to the Court may be just in the premises."

The defendant in apt time filed the following demurrer:

"Comes now the defendant through his attorneys and demurs to the complaint in this cause of action, and moves to dismiss same on the following grounds, to-wit:

"1. That said complaint fails to state a cause of action against T. B. Andrews, the defendant herein.

"2. That said complaint fails to put any duty on the part of the defendant to protect the property of the plaintiffs from the alleged depredation of wild fowl as alleged in the complaint.

"3. That said complaint fails to allege any negligent action on the part of the defendant which would create any liability on the part of the defendant to said plaintiffs or either of said plaintiffs.

"4. That said complaint fails to allege any specific act or acts of negligence on the part of the defendant or any of his agents, representatives or servants by virtue of which the damage alleged to have been suffered by the plaintiffs, or either of them, was occasioned or inflicted.

"5. That plaintiffs failed to allege the commission of any unlawful act or any negligent act on the part of the defendant which proximated the alleged depredation of the plaintiffs' property by wild fowl.

"6. That said complaint does not allege any lawful or legal causal connection between unlawful or negligent acts of the defendant and the alleged depredation of the property of the plaintiffs by wild fowl.

"7. That said complaint failed to allege that the wild fowl which allegedly damaged the property of the plaintiffs, was owned, possessed, or controlled in any manner whatsoever by the defendant.

"8. That the defendant is not liable for the trespasses of animals which are *feras naturae,* and which have not been reduced to possession but which exist in a state of nature."

From the judgment sustaining the demurrer, the plaintiffs appeal.

*M. C. McLeod for plaintiffs, appellants.*
*Pittman & Webb, By: W. G. Pittman for defendant, appellee.*

HIGGINS, J.　On account of the novelty of the question involved in this appeal, we have set out in full both the complaint and the demurrer. The assignment of error raises the question whether the complaint states a cause of action.　If it does, the judgment must be reversed.　If it fails, the judgment must be affirmed.　The question of proof does not arise at this stage of the proceeding.　We are concerned with allegation alone.　Does the complaint allege enough facts to entitle the plaintiffs to go to the jury if they prove all they allege?

Some of the salient facts alleged are: The defendant in 1949 constructed upon his own land an artificial pond covering three and one-half acres within 400 feet of plaintiffs' lands which theretofore had never suffered depredations by wild geese.　During the winter of 1951-1952 the defendant placed lame wild geese (those that cannot fly) on the pond, kept food and bait on and around the pond *for the purpose of attracting wild geese,* and as a result of the decoys and food, *wild geese in large numbers immediately came to the pond;* and from it as a base,

foraged out upon the adjacent lands of the plaintiffs, destroying their crops. The first year, because of the food and decoys maintained on and around the pond, approximately 200 wild geese spent the winter there. For the same reasons about 1,200 spent the succeeding winter; and the third winter approximately 3,000 stayed from October until Spring. These wild geese feeding out from the defendant's pond as a base, destroyed plaintiffs' crops of the value of $48.00 the first year, $105.00 the second year, and $1,343.00 the third year.

The plaintiffs allege also the defendant knew it is the nature of wild geese to do the things charged. He knew they migrate from the north in the Fall months to ponds where shelter, food, and other geese are located, or lame geese kept. Geese spend the winter on the pond and feed on the surrounding countryside, particularly on cultivated crops. In the Spring they migrate north, raise young geese, and *return to the same pond* with their young and with additional geese to spend the winter so long as shelter, decoys, and food are provided. As more and more wild geese are attracted, they feed upon and become more and more destructive to plaintiffs' crops, grown and growing upon their lands. Of all this the defendant had knowledge.

The defendant continues to maintain lame wild geese upon his pond and up until the time of bringing this suit is and has been placing food for them. The plaintiffs have repeatedly warned the defendant of the damage to their crops by the geese attracted to the pond, but the defendant only laughed at and ridiculed the plaintiffs' complaint and refused to abate the nuisance.

The defendant argues in his brief no cause of action arises because the geese are wild; that the defendant does not own them; that they are in a state of nature; that he is not responsible for what they do; that it was lawful for him to build a pond on his own land and that if he feeds geese because of his love for wild things he is within his rights; that the plaintiffs have no right to complain, at least to complain in the courts.

The argument appears deceptively logical until a few other pertinent facts are taken into account. The defendant knew, according to the allegations in the complaint, that wild geese are attracted to a pond where food is placed and where lame wild geese are maintained; that each year they return to the same pond in numbers increasing in geometric progression as long as shelter and food and decoys are provided. They feed out from the base which the defendant maintains and destroy crops, especially those close at hand. Plaintiffs' farm of 449.2 acres is within 400 feet of the base of operations provided and maintained for the geese by the defendant with knowledge of what they do. At the same rate of increase 7,500 will be there this year and 20,000 next. If there is no relief for the plaintiff as of the date suit was brought, there

will be none next year. Surely the arm of the law is neither too short nor too weak to reach out to the pond and take away the wild geese maintained as prisoners there to attract their kind in ever increasing numbers.

While careful search fails to reveal a case based on similar facts, the application of well established legal principles offers some help in pointing the way to a solution of the legal problem presented. The plaintiffs call to their aid an ancient maxim handed down to us from the time when Latin was the language of the court: *Sic utere tuo ut alienum non laedas,* (to use your own so that you do not injure another). The law makes it a private nuisance when one by an improper use of his property does injury to the land, property, or rights of another. *Holton v. Oil Co.,* 201 N.C. 744, 161 S.E. 391.

The plaintiffs' cause of action is grounded in that field of tort liability designated as private nuisance. Private nuisance may be *per se* or *per accidens.* A private nuisance *per se* (by itself) or at law, is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. A private nuisance *per accidens,* or, in fact, becomes a nuisance by reason of its location or the manner in which it is constructed, or maintained, or operated. *Morgan v. Oil Co.,* 238 N.C. 185, 77 S.E. 2d 682.

The defendant, in the brief and on the oral argument, contends the complaint is insufficient by reason of the fact that negligence neither in the construction of the pond nor in the manner in which it is maintained and operated is alleged. The argument ignores the fact that negligence and nuisance are separate fields of tort liability. While the same act or ownership may constitute negligence and at the same time become a nuisance *per accidens,* and be practically inseparable, yet the latter may be created, or maintained, or operated without negligence. *Swinson v. Realty Co.,* 200 N.C. 276, 156 S.E. 545.

"Most private nuisances *per accidens,* or, in fact, are intentionally created or maintained and are redressed by the courts without allegation or proof of negligence." *Morgan v. Oil Co., supra; Godfrey v. Power Co.,* 190 N.C. 24, 128 S.E. 485. In the *Morgan case, Justice Ervin* discusses most thoroughly the whole concept of nuisance liability, citing the decisions of many courts.

We conclude the plaintiffs' complaint, when liberally construed, states a cause of action for nuisance *per accidens,* or in fact. Whether they can offer proof to support the allegations of the complaint will present a problem for another day and another tribunal.

The judgment of the Superior Court of Richmond County is
Reversed.

PARKER, J., dissenting: This question is presented for decision: Can the defendant be held liable for the trespasses of wild geese, which are *ferae naturae*, which he did not own and which have not been reduced to possession, but exist in a state of nature? My brethren say Yes: I do not agree.

The general rule is there is no individual property in wild animals, geese or fish so long as they remain wild, unconfined, and in a state of nature. 2 Am. Jur., Animals, p. 696.

The doctrine of liability attaching to one who owns or keeps insecurely confined on his premises wild animals causing injury has no application to the facts here. As to that see: Anno. 69 A.L.R. 500; 3 C.J.S., Animals, Section 143.

*Sickman v. U. S.*, 184 F. 2d 616, *certiorari* denied 341 U.S. 939, 95 L. Ed. 1366, rehearing denied 342 U.S. 843, 96 L. Ed. 637, motion for leave to file a second petition for rehearing denied, 342 U.S. 874, 96 L. Ed. 657, is a case with strikingly similar facts, and was brought under the Federal Tort Claims Act, 28 U.S.C.A., Sections 1346 (b) and 2671-2680, to recover $26,500.00 alleged damages to crops of corn and soybeans claimed to have been destroyed in 1946 and 1947 by migratory waterfowl, principally Canada geese. The Court said: ". . . a private person could not be held liable for the trespasses of animals which are *ferae naturae*, and which have not been reduced to possession, but which exist in a state of nature. The United States, considered as a private person, did not have any ownership, control or possession of these wild geese which imposed liability for their trespasses."

I vote to affirm.