KENNETH W. GLACE AND WIFE, FRANCES GLACE v. THE TOWN OF PILOT MOUNTAIN.

(Filed 23 July, 1965.)

**1. Municipal Corporations § 15—**

Where a municipality operates a sewage disposal system which, even though operated in a non-negligent manner, constitutes a nuisance, permanent in character, by reason of noxious odors which diminish the value of abutting property, the property owner may recover damages as for a partial taking of property by eminent domain, and plaintiff's evidence in this case *held* sufficient to be submitted to the jury on the theory of such taking.

**2. Same; Eminent Domain § 2—**

Where a municipality operates a sewage disposal plant, permanent in nature, which constitutes a nuisance amounting to a partial taking of abutting property, a temporary cessation of the operation of the plant does not abate the owner's action for permanent damages, and the municipality upon payment of such damages acquires a permanent easement which it may or may not exercise in the future as it sees fit.

**3. Eminent Domain § 5—**

Where the evidence makes out a *prima facie* case of a partial taking of property by reason of odors emanating from defendant's sewage disposal plant, an instruction that plaintiff could recover only for the impairment of the market value of his property by reason of noxious odors cannot be held prejudicial on defendant municipality's appeal, since the instruction amounts to a charge that the compensation was the difference between the fair market value of the property before and after the taking, and only plaintiff could object to the failure of the court to charge upon the right of the jury to award interest.

**4. Evidence § 55—**

Where plaintiff testifies in regard to noxious odors on his land emanating from defendant's abutting sewage disposal plant, it is not error to permit him to read a telegram, sent to the municipal officials a few months after the plant began operation, to the effect that plaintiff was forced to abandon his home by reason of the odors, the testimony being competent to corroborate plaintiff's testimony at the trial.

**5. Appeal and Error § 41—**

Exception to the admission of evidence cannot be sustained when evidence of like import has theretofore been introduced without objection.

**6. Eminent Domain § 5—**

Where plaintiff in his action to recover compensation for a partial taking of his land does not demand interest and does not object to the failure of the charge to submit to the jury the right to award interest, and there is no agreement of the parties that interest should be added to any recovery or that there had been a partial taking, the act of the court in allowing interest from the date the cause of action arose is error, and the judgment will be corrected to allow interest only from the date of the judgment, with computation of interest as part of the cost from date of the verdict to the entry of judgment. G.S. 24-5.

**7. Appeal and Error § 28—**

The failure of the judgment to conform to the verdict is an error appearing on the face of the record, and such error may be corrected on appeal without service of case on appeal.

APPEAL by defendant from *McLaughlin, J.,* September 1964 Civil Session of SURRY; and by plaintiffs from *Johnston, J.,* January 1965 Session of SURRY.

This action was begun on February 4, 1963, to recover the diminished value of plaintiffs' homeplace resulting from a nuisance, the operation of a sewage disposal plant emitting foul and deleterious gases in close proximity to plaintiffs' home.

The jury found plaintiffs' property had been permanently damaged by the construction and operation of defendant's disposal system. It assessed damages. Judgment was entered for the amount found by the jury, with interest thereon from a date fixed by the court. The amount

reported by the jury, plus interest, was adjudged compensation for the easement acquired. Defendant excepted and appealed.

*Hudson, Ferrell, Petree, Stockton, Stockton & Robinson; W. F. Maready; R. C. Vaughn, Jr., for plaintiffs.*
*Norman and Read for defendant.*

### DEFENDANT'S APPEAL

RODMAN, J. If a municipal corporation, by the construction and operation of a sewage disposal system or other facility, pollutes the air or otherwise creates a nuisance, permanent in character, thereby diminishing the value of property in proximity to the operation, the municipality is liable for the damage done. Since a municipality has the right to condemn property for the construction and operation of sewage systems and related facilities, permanent damages may, at the instance of the property owner, be assessed when the maintenance of the facility in a non-negligent manner results in injury to the property of an abutting owner, amounting to a limited taking. These principles have been declared so repeatedly and consistently that they are not now open to question. *Spaugh v. Winston-Salem,* 249 N.C. 194, 105 S.E. 2d 610; *Eller v. Board of Education,* 242 N.C. 584, 89 S.E. 2d 144; *McKinney v. High Point,* 237 N.C. 66, 74 S.E. 2d 440; *McLean v. Mooresville,* 237 N.C. 498, 75 S.E. 2d 327; *Raleigh v. Edwards,* 235 N.C. 671, 71 S.E. 2d 396; *Veazey v. Durham,* 232 N.C. 744, 59 S.E. 2d 429; *Bruton v. Light Co.,* 217 N.C. 1, 6 S.E. 2d 822; *Ivester v. Winston-Salem,* 215 N.C. 1, 1 S.E. 2d 88; *Clinard v. Kernersville,* 215 N.C. 745, 3 S.E. 2d 267; *Gray v. High Point,* 203 N.C. 756, 166 S.E. 911; *Wagner v. Conover,* 200 N.C. 82, 156 S.E. 167; *Rhodes v. Durham,* 165 N.C. 679, 81 S.E. 938; *Donnell v. Greensboro,* 164 N.C. 330, 80 S.E. 377; *Moser v. Burlington,* 162 N.C. 141, 78 S.E. 74.

The jury could find from the evidence: Plaintiffs' home is situate on the south side of N. C. Highway 268. The lot contains 1.8 acres. It is situate "a short distance" west of Pilot Mountain. Plaintiffs purchased the lot in 1947. They erected a home in 1948. They lived there until 1962. In 1959, defendant remodeled its sewage disposal system. It constructed two lagoons, which have a surface area of 5 acres. They vary in depth, averaging perhaps 4 or 5 feet. They have concrete sides. The effluent from the town's sewers emptied into the lagoons. Work on the lagoons was completed in the late summer or fall of 1959. No objectionable odors were observed at that time, but in April or May 1960, "these ponds deteriorated and got real ripe and commenced to smell and the ponds just ceased to function as proper ponds and started issuing these

horrible odors. The odors are so horrible it is really hard to put it in words." When not supplied with adequate oxygen, "the sulphur comes off in the gas such as hydrogen sulphide. * * * this gas smells like rotten eggs. It is also toxic. The word 'toxic' means poisonous. * * * it kills people, animals."

Defendant's lot, on which the lagoons were constructed, is on the opposite side of the driveway from plaintiffs' home. One of the lagoons is only 100 yards from plaintiffs' property, and 500 feet from plaintiffs' residence. The odors are less intense on bright, sunshiny days than on cloudy days or at night.

Witnesses for plaintiffs and for defendant disagreed with respect to the intensity of the odors and the frequency with which the fumes pollute the atmosphere surrounding plaintiffs' property. Defendant's witnesses estimate the deleterious odors can be detected only one-third of the time. Plaintiffs' witnesses assign a much higher percentage of time in which plaintiffs' home is affected by the pollution.

Witnesses for plaintiffs and for defendant disagree as to the amount of damage which plaintiffs have suffered. Plaintiffs' witnesses put the damage at $18,000-$20,000. Defendant's witnesses estimate the damage at $500-$1,000. Male plaintiff, a chemical engineer with extensive experience in sanitary engineering, protested the construction of the lagoons in 1959, and prophesied the result of which he is now complaining.

The effective method of reducing or eliminating the odors is the incorporation of oxygen in the effluent. Defendant sought by various means to eliminate or control the production of gas. It used aerators. It raised and lowered the water level in the ponds. It also used sodium nitrate. The Town Clerk and Treasurer testified: "Incidentally, it's [sodium nitrate] the only thing we have found which will work. However, it is too doggoned expensive. We can't use it on a continuing basis. We have been using it when the odor got obnoxious."

Plaintiffs moved from their home to Elkin in 1962. They assigned as the reason for moving the offensive odors emanating from the lagoons. Defendant, in an effort to rectify the conditions complained of, has let contracts for the construction of aerators. These aerators will, by paddles stirring the water, mechanically incorporate oxygen. To construct these aerators, it was necessary to drain the lagoons. Defendant, some 5 or 6 weeks prior to the trial, drained the lagoons. After the drainage, no offensive odors were given off.

Defendant asserts that since the nuisance had terminated, plaintiffs were not entitled to permanent damages.

There is no intent on the part of defendant to abandon its sewage system, or the use of the lagoons. The lagoons will be empty only so long as necessary to install the areators.

The jury has found the operation has impaired, and will continue to impair, the value of plaintiffs' property. Plaintiffs' right of action can not be defeated by temporary cessation of use, or by a change in the manner in which the plant is operated. The rule here applicable was stated by Moore, J. in *Midgett v. Highway Commission*, 260 N.C. 241, 132 S.E. 2d 599. He said: "Once the cause of action has occurred by the infliction of damage to the property, the taking is a *fait accompli*. This is true because the government had the authority to invade the property rights of the landowner and to appropriate them to public use in the first instance, and the owner had no right to abate the nuisance. His only remedy is a single action for permanent damage to his property by reason of the taking. The government has an easement to continue the obstruction permanently, and whether it will continue to maintain the obstruction, alter it, or remove it altogether is optional with the government."

The court properly overruled defendant's motion for nonsuit. It properly submitted the issue of permanent damages to the jury.

The court instructed the jury that plaintiffs could only recover "for the impairment of the market value of the property by noxious odors as alleged in the Complaint." Defendant complains of this charge. But when the charge is read as a whole, and interpreted in the light of the evidence, we do not think the jury could have misunderstood the yardstick given it to measure the amount of compensation due plaintiffs, that is, the difference between the fair market value of the property before the taking and the fair market value of the property immediately following the taking.

The yardstick the jury was instructed to use is not subject to criticism by defendant. *Barnes v. Highway Commission*, 250 N.C. 378, 109 S.E. 2d 219; *Statesville v. Anderson*, 245 N.C. 208, 95 S.E. 2d 591; *Gallimore v. Highway Comm.*, 241 N.C. 350, 85 S.E. 2d 392. Whether plaintiffs could complain because the jury was not informed of its right to allow interest does not arise on defendant's exceptions.

Having protested the installation of lagoons in close proximity to his home, male plaintiff, in the spring of 1961, sent a telegram to the city officials, stating, the "sewage stench forces me to abandon my home." Plaintiff was permitted, over defendant's objection, to read the telegram. True, plaintiffs did not leave their home until some months later, but the message was competent to corroborate plaintiffs' testimony that the air was malodorous, and not sweetly perfumed. *Walker v. Baking Co.*, 262 N.C. 534, 138 S.E. 2d 33; *Stott v. Sears, Roebuck and Co.*, 205 N.C. 521, 171 S.E. 858; Stansbury's N. C. Evidence, § 51.

Feme plaintiff was permitted, over defendant's objection, to testify that on one occasion, when the odor was particularly offensive, a small child was made sick. There was uncontradicted evidence that the gas coming from the lagoons was toxic. Other witnesses had testified, without objection, that the odor had produced sickness, nausea and vomiting. The assertion of prejudicial error in permitting the witnesses to testify cannot be sustained. *Hall v. Atkinson*, 255 N.C. 579, 122 S.E. 2d 200; *Stockwell v. Brown*, 254 N.C. 662, 119 S.E. 2d 795; *Lookabill v. Regan*, 247 N.C. 199, 100 S.E. 2d 521.

The last of defendant's assignments of error which requires discussion is directed to the judgment. To determine the amount which plaintiffs were entitled to recover, the court submitted this issue:

"If so, what permanent damage, if any, is the plaintiff entitled to recover?

"ANSWER: $9,000."

Notwithstanding the verdict, the court adjudged plaintiff "recover of the defendant, The Town of Pilot Mountain, the sum of Nine Thousand ($9,000.00) Dollars *with interest at six (6%) per cent per annum from June 1, 1960, until paid* as permanent damages * * *."

Plaintiffs, when they filed their complaint, did not specifically ask for interest. They did not request the court to charge the jury that they were entitled to an allowance of interest, nor did they except to the charge defining the yardstick to be used in measuring damages. There was no agreement that interest should be added to the sum fixed by the jury. There is evidence from the plaintiffs that their right of action accrued in April or May 1960, but that fact has not been established by admission of defendant, agreement of the parties or by jury verdict. The court erred by adjudging defendant liable for damages not awarded by the jury. *Board of Education v. McMillan*, 250 N.C. 485, 108 S.E. 2d 895; *Yancey v. Highway Com.*, 221 N.C. 185, 19 S.E. 2d 489; *Durham v. Davis*, 171 N.C. 305, 88 S.E. 433; *R. R. v. Manufacturing Co.*, 166 N.C. 168 (184), 82 S.E. 5.

The judgment will be corrected by deleting the clause requiring payment of interest from June 1, 1960 to September 23, 1964, the date the judgment was signed. Interest, of course, accrues on the amount fixed by the jury from September 23, 1964, until paid, G.S. 24-5. In addition, the Clerk will compute and add as part of the cost interest from the date the jury rendered its verdict until September 23, 1964, when the judgment was signed, G.S. 24-7.

Modified, as here directed, the·judgment from which defendant appeals is affirmed.

Modified and affirmed.

## PLAINTIFF'S APPEAL

The jury returned its verdict in the action for damages on Friday, September 18, 1964. The parties then stipulated in open court that the judgment and appeal entries could be signed after the expiration of the session and out of the district. Pursuant to this stipulation, judgment was mailed to Judge McLaughlin. He signed the judgment on September 23. He mailed the judgment to the Clerk. It was received by the Clerk in due course. When Judge McLaughlin signed the judgment on the 23rd, he noted defendant's objections and exceptions thereto, and its notice of appeal. On October 5, 1964, defendant presented additional appeal entries to Judge McLaughlin. He, on that date, signed an order reciting: "Defendant as appellant was by consent and the order of the Court allowed 90 days in which to prepare and serve case on appeal, and plaintiffs as appellees 30 days after such service in which to serve countercase or exceptions."

Defendant, on December 31, 1964, served its statement of case on appeal, which included the exceptions on which it relied, and its assignments of error. On February 7, 1965, counsel for plaintiffs gave notice that it would move, at the January 1965 Session of Surry Superior Court, for an order dismissing defendant's appeal, assigning as the reason for the motion the failure to serve case on appeal in due time. This motion was heard by Judge Johnston, at the time fixed in the notice. He denied plaintiffs' motion. Plaintiffs excepted and appealed.

Plaintiffs supplement their appeal from Judge Johnston's order denying their motion by a motion in this Court to dismiss the appeal because of the failure to serve case within the stipulated time.

We are of the opinion that the order signed by Judge McLaughlin on October 5, 1964, allowing 90 days in which to serve case on appeal, fairly interpreted, meant the time to serve case would run from October 5, 1964, and not from the expiration of the September 1964 Session of Surry Superior Court.

We need not, however, decide that question since error appears on the face of the record. The judgment signed did not conform to the verdict. Defendant was entitled to have that error corrected without the service of a case on appeal. *Little v. Sheets,* 239 N.C. 430, 80 S.E. 2d 44; *Board of Education v. McMillan, supra; Wiggins v. Tripp,* 253 N.C. 171, 116 S.E. 2d 355.

On plaintiffs' appeal

Affirmed.