Max WRIGHT, T/A Wright's Grocery, Appellant,

v.

MASONITE CORPORATION, Appellee.

Max WRIGHT, T/A Wright's Grocery, Appellee,

v.

MASONITE CORPORATION, Appellant.

Nos. 9940, 9941.

United States Court of Appeals Fourth Circuit.

Argued June 29, 1965.

Decided Oct. 19, 1966.

Albert V. Bryan, Circuit Judge, dissented.

W. F. Maready and J. Robert Elster, Winston-Salem, N. C. (Norwood Robinson and Hudson, Ferrell, Petree, Stockton, Stockton & Robinson, Winston-Salem, N. C., on brief), for Max Wright.

Arthur O. Cooke, Greensboro, N. C. (Russell Van Landingham, Thomasville, N. C., and Cooke & Cooke, Greensboro, N. C., on brief), for Masonite Corp.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BRYAN, Circuit Judges.

HAYNSWORTH, Chief Judge:

We affirm the District Court's dismissal of this action in which the plaintiff sought damages for loss of a stock of goods in his grocery store as a result of contamination by noxious gases, for the invasion was not intentional within the requirements of the North Carolina rule.

In the winter of 1963, there was a strong odor of formaldehyde gas in the plaintiff's grocery store. A large portion of his stock of goods became infected with the odor. Many items were returned after sale, and the remainder of the infected goods became unsalable. Wright had never before experienced such a loss.

He sought the assistance of a number of governmental agencies whose investigators were unable to detect any formaldehyde gas in the atmosphere outside Wright's store, though it was obviously present within the store. Finally, however, an acquaintance with access to some laboratory facilities took samples of the outside air which, according to tests conducted by him, disclosed the presence of some such gases.

Approximately 200 feet from the plaintiff's store was a building in which the defendant conducted its factory operations. Approximately 5% of its production of masonite board was finished with synthetic lacquers and varnishes. Such lacquers and varnishes contain a urea-formaldehyde resin. In the process of formation of the resin, a very small quantity of free formaldehyde may be left. Moreover, when such a resin is subjected to heat or certain acids it may suffer a chemical breakdown with consequent release of formaldehyde gas and ammonia.

It was the plaintiff's theory that formaldehyde gas was present in the exhaust from the spray booth in which synthetic lacquers and varnishes were applied to some of defendant's products and was the source of the gases which permeated his stock of goods. His initial inference was not an unnatural

one, for when he first noticed the obnoxious odor in his store, it seemed to him to resemble the odor of a lacquer or varnish, though the governmental investigators thought the odor in the store unlike that of the defendant's exhaust gases.

Though there was evidence of a source of the contamination inside the store, in the vaporization of lighter fluid leaking from a number of containers stored near a gas-fired heater, and though the odor disappeared shortly after those containers were moved at the suggestion of governmental investigators, the District Court resolved the factual conflict in plaintiff's favor. It found that the defendant's plant was the source of the offending gases that caused the harm to the plaintiff's goods. At the same time, the District Court found, on uncontradicted evidence, that the defendant knew nothing of the harm that the plaintiff was suffering until after the event, that it had received no prior complaints from the plaintiff or from anyone else and that others living in the area experienced no similar harm. So far as appears on this record, no one has since suffered any such harm from exhaust gases discharged by the defendant.

On the basis of these findings the District Court concluded that the invasion was not intentional and that the defendant's conduct was not an actionable private nuisance under the laws of North Carolina, which govern us in this diversity case.

Some American states have applied the rule of Rylands v. Fletcher,[1] in noxious gas cases. They are collected in Prosser on Torts, 3rd Edition, at pages 524–6. They include Maryland and South Carolina, in this Circuit, but not North Carolina. The more general rule in the United States confines the Rylands v. Fletcher doctrine to ultrahazardous activities.

This is recognized by Prosser and by the Restatement. Since the North Carolina Supreme Court, in discussing this subject, frequently has cited and paraphrased the Restatement, it provides a particularly useful point of reference.

In the Restatement of Torts, the Rylands v. Fletcher doctrine, as applied to ultrahazardous activity, is set forth in §§ 519–20. The very different rules governing liability for private nuisances are set forth in Chapter 40, the first section of which is 822. That section provides that an actor is liable for a nontrespassory invasion of another's interests in land if, in this context,[2] the invasion is both intentional and unreasonable. Under § 825, the invasion is intentional within the meaning of § 822 only if the actor acts for the purpose of causing the harm or knows that it is resulting or is substantially certain to result from his conduct. Sections 826, et seq., elaborate the rules for application of the concurrent requirement that the actor's conduct be unreasonable.

Morgan v. High Penn Oil Co., 238 N. C. 185, 77 S.E.2d 682, was a noxious gas case. There was no question that the invasion was intentional within the meaning of Restatement §§ 822 and 825, for it was the result of a persistent discharge of gases after actual notice of the harm they were causing. Nevertheless, the Supreme Court of North Carolina took pains to point out:

"* * * [A] person is subject to liability for an intentional invasion when his conduct is unreasonable under the circumstances of the particular case * * *. See Scope and Introduction Note to Chapter 40, American Law Institute's Restatement of the Law of Torts * * *.

"An invasion of another's interest in the use and enjoyment of land is intentional in the law of private nuisance when the person whose conduct is in

---

1. Fletcher v. Rylands, 1865, 3 H. & C. 774, 159 Eng.Rep. 737, reversed in Fletcher v. Rylands, 1866, L.R. 1 Ex. 265, affirmed in Rylands v. Fletcher, 1868, L.R. 3 H.L. 300.

2. In other contexts, of course, one may be responsible for unintentional invasions of interests in land resulting from reckless, negligent, or ultrahazardous conduct.

question as a basis for liability acts for the purpose of causing it, or knows that it is resulting from his conduct, or knows that it is substantially certain to result from his conduct. Restatement of the Law of Torts, § 825 * *." (page 689).

Its ultimate conclusion was expressed in the following language:

" * * * When the complaint is construed as a whole, however, it alleges facts which show a private nuisance resulting from an intentional and unreasonable invasion of the plaintiffs' interest in the use and enjoyment of their land." (page 690).

The first sentence from the first excerpt from the *Morgan* opinion, quoted above, cannot be construed as meaning the injury is intentional if the actor's conduct is unreasonable. In that case, it was conceded that the harm was intentional. The action was for an injunction and for damages suffered after notice to the defendant, admittedly received, of the harm the fumes were causing. The Court's language is simply the equivalent of, "though the invasion be intentional within the meaning of the rules contained in Restatement, Torts, Chapter 40, the actor is not liable unless his activity was also unreasonable." That this is so, finds support in the fact that the Court documented its statement by a general citation to the entire introductory note to Chapter 40 of the Restatement. Any doubt about the meaning of the first sentence, however, is dispelled by the fact that, in its very next breath, the opinion defines exactly what is meant by an "intentional invasion." This is done in the very language of Restatement § 825, though without quotations, and is followed, immediately and appropriately, by a citation of that section.

Certainly, the holding in a case in which it was conceded that the invasion was wrought with knowledge of the harm it was causing cannot stand for the proposition that such knowledge is not an essential of the cause of action. When the Court, nevertheless, has gone out of its way to spell out the requirement of knowledge in the language of, and with specific citation to, the Restatement's formulation, a conclusion that North Carolina has rejected those principles is impermissible. Far from intimating that in North Carolina the invasion need not be intentional if the defendant's discharge of noxious gases on its own land can be said to be unreasonable though done with due care and prudence, the Supreme Court of that state has explicitly stated that it must be. When the Court has stated the requirement in the language of the Restatement, with appropriate acknowledgment of its source, there is no room for a construction of the opinion as a rejection of the Restatement's formulation.

Such a construction cannot be founded on the Court's quotation of the Cardozo dictum in McFarlane v. City of Niagara Falls, 247 N.Y. 340, 160 N.E. 391, 57 A.L.R. 1. The quotation follows a statement that one who intentionally creates a private nuisance is liable for the harm it causes regardless of negligence. The quotation lends support to that proposition, the immediate subject of discussion. It cannot support an inference that in North Carolina, the harm need not be intended, for any such inference is expressly controverted by what the Court had expressly said earlier in the same opinion when explicitly discussing the question of intention.[3] What the Court said when directing itself to the immediate problem cannot be negated by dubious inferences derived from language it employed in discussing a related but different problem.

The other North Carolina case to which the parties principally look is Watts v. Pama Manufacturing Company, 256 N.C. 611, 124 S.E.2d 809. It is not a noxious gas case at all. It involved nothing remotely suggestive of ultrahazardous activity. It is, however, an ordinary pri-

---

3. Even in the Cardozo dictum, there well may be an implicit assumption of intention, because the subject is approached in terms of a duty to desist, a duty which, supposedly, would arise only upon notice that harm was being caused.

vate nuisance case, as this one is said to be.

In that case, it appears that in 1957 the plaintiff built a house on a lot adjacent to a hosiery mill. He experienced no annoyance from the operation of the hosiery mill, but in 1960 the defendant converted the plant to other uses, installed much heavier machinery and enlarged the air-conditioning system. The almost continuous operation of the new, heavy machinery and enlarged air-conditioning equipment created vibrations which were transmitted to plaintiff's house. He protested, but to no avail. Thereafter, the house sustained substantial vibration damage.

Again, as in *Morgan*, there was no question but that the invasion was intentional. The house sustained the damage when the defendant continued the operation of its new, heavy machinery after notice of the harm it was causing the plaintiff in the use and enjoyment of his house. The fact that the invasion was intentional being conceded, the only question in the case was the reasonableness of the defendant's activity on its land.

That the court focused its attention on the only issue in the case is readily explicable. The court's statement, in the context of that case, that "The question is whether or not the use is unreasonable," was the literal and whole truth. It contains no implication of a rejection of the intentional requirement. Nor does the court's general statement that one "is subject to liability for an intentional nontrespassory invasion \* \* \* when his conduct is unreasonable." On the contrary, there was no reason to classify the invasion as intentional unless it was of some significance.

It would have been surprising if the court had addressed itself at large to an issue which the case did not present. Nevertheless, as in *Morgan*, it took pains

to define the intentional requirement. It said:

"An invasion of another's interest in the use and enjoyment of land is intentional in the law of private nuisance when the person, whose conduct is in question as a basis of liability, acts for the purpose of causing it, or knows that it is substantially certain to result from his conduct." (page 813).

That is the language of Restatement § 825. The court thus positively and affirmatively foreclosed a construction of its opinion that in North Carolina one in possession of land may be liable for an unreasonable, though unintended, nontrespassory invasion of another's interest in land resulting from conduct which is neither negligent nor ultrahazardous.[4] Its use, in defining the requirement, of the language of Restatement § 825 leaves no room for speculation that North Carolina imposes no such requirement or that it would not be applied in accordance with the reasonable and fair import of the language used.

The language a court uses, of course, cannot negate its holdings. There is no inconsistency here, however. In *Morgan*, *Watts*, and in every other North Carolina case in this area, which has been brought to our attention, the invasion was clearly intentional.[5]

North Carolina's Supreme Court, both substantively and verbally, has embraced the Restatement's Chapter 40 formulation and applied those principles in noxious gas cases. The court's language, simply but emphatically, forecloses any suggestion that its embrace has been tentative, reluctant or reserved.

■ Since, in this diversity case, we are required to apply North Carolina law, as declared by its highest court, we are not at liberty to disregard what it has done and said or, by a process of inference from extracted words not immediate-

4. The Court also cited Restatement § 822 where it is clearly stated that liability results from a substantial invasion only if it is both intentional and unreasonable.

5. See Glace v. Town of Pilot Mountain, 265 N.C. 181, 143 S.E.2d 78 (1965); Midgett v. North Carolina State Highway Commission, 260 N.C. 241, 132 S.E.2d 599 (1963); Andrews v. Andrews, 242 N.C. 382, 88 S.E.2d 88 (1955).

ly germane, to attribute meanings to its opinions which are in conflict with the plain and unequivocal language that court has used in those same opinions when directly discussing the precise question before us.

■■ Since there was no negligence and the invasion was unintentional within the meaning of the rule applied in North Carolina, the District Court properly concluded there was no private nuisance giving rise to a cause of action for damages.

Affirmed.

ALBERT V. BRYAN, Circuit Judge (dissenting):

Although he was forced to abandon his business by the defendant's infiltration of his store with noxious odors, as the majority finds, yet the plaintiff is denied damages. The premise of the holding is that until the creator of a nuisance is notified that his acts are resulting in injury to another, no right of action accrues to the latter, no matter how grievous the intrusion. The consequences of this view are amazing. One's property may be invaded by offensive gases from a source not discoverable for weeks, months or even years, and in the end the property rendered uninhabitable or otherwise valueless, but the injury is not actionable! I cannot believe this is the law in North Carolina.

The majority seems intent upon deciding this case according to the law of the Restatement of Torts, but that is not our obligation. We are bound by the law according to North Carolina even though it deviates from the Restatement. My analysis of the North Carolina Supreme Court decisions discloses that while the Restatement has been cited, it has not been slavishly followed. Other authorities have been cited too. With cognizance of them all, the Court has not yet said, as I read the North Carolina opinions, that recovery cannot be allowed in the absence of proof of scienter on the part of the offender.

This element is not made crucial in any North Carolina opinion I can find. The majority argues that knowledge was in fact present in the North Carolina cases, and hence there was no occasion for the Court to discuss it. If this argument be factually correct, then with equal logic it follows that those cases do not hold knowledge to be a sine qua non for recovery.

A private nuisance in North Carolina, and generally, consists of a continuing condition, or recurrent acts, springing from an intentional or negligent use of one's property and substantially injuring another in his person or property, through an unprivileged and unreasonable invasion of the latter's utilization of his land.

Such an intrusion on the personal and property rights of another is actionable if the generating acts are intentional, though there be no proof of negligence. On the other hand, if the injuring acts were accidental—devoid of neglect or intent—there can be no recovery. If the conduct is careless or is deliberate, and injuriously entrenches upon the private rights of another, the operation constitutes an actionable private nuisance, no matter how innocent or bona fide it may be. These propositions are, I believe, doctrine in North Carolina.

The District Court's findings established, as the majority concedes, that appellee Masonite was purposely emitting noxious gases, which substantially and unreasonably invaded Wright's property. Thus, his hurt arose from what Masonite did, and *intended to do,* i. e., to expel and rid its plant of unwholesome fumes. True, the expulsion was not negligent, reckless, ultrahazardous or accidental in any sense, and Masonite *did not intend to injure anyone,* but injury there was.

To ascertain whether the acts were intentional, the inquiry is directed in North Carolina, and rightly I think, to the voluntariness of the offending acts. This inquiry does not pertain to the effect or consequences of the acts. It is not whether the *injury* was intentional; but whether the *causative acts* were intentionally done. The only question in respect

to the injury is whether it was substantial and unreasonable.

Precedent in North Carolina, in my appraisal, does not impose as a prerequisite of "intentional" the condition that the guilty offender know he is guilty. It is intentional if his use of his property is deliberate and is an unreasonable use. In comparable circumstances—objectionable gases from a refinery on adjoining land—the Court in Morgan v. High Penn Oil Co., 238 N.C. 185, 77 S.E.2d 682 (1953) made these points in a comprehensive commentary:

"[A] private nuisance exists in a legal sense when one makes an improper use of his own property and in that way injures the land or some incorporeal right of one's neighbor. * * *

\* \* \* \* \* \*

"[T]he invasion which subjects a person to liability for private nuisance may be either intentional or unintentional; * * * a person is subject to liability for an intentional invasion when his conduct is unreasonable under the circumstances of the particular case * * * (77 S.E.2d at 689) (Citations omitted.)

\* \* \* \* \* \*

"When the evidence is interpreted in the light most favorable to the plaintiffs, it suffices to support a finding that in operating the oil refinery the [defendant] intentionally and unreasonably caused noxious gases and odors to escape into the nine acres of the plaintiffs to such a degree as to impair in a substantial manner the plaintiffs' use and enjoyment of their land. This being so, the evidence is ample to establish the existence of an actionable private nuisance, entitling the plaintiffs to recover temporary damages from the [defendant]."

Summarizing, the Court quotes the sententious statement of the late Justice Cardozo:

" 'One who emits noxious fumes or gases day by day in the running of his factory may be liable to his neighbor though he has taken all available precautions. *He is not to do such things at all,* whether he is negligent or careful.' McFarlane v. City of Niagara Falls, 247 N.Y. 340, 160 N.E. 391, 57 A.L.R. 1." (Id. at 690) (Accent added.)

If this statement was dictum when written, as the majority suggests, it has now been established as a sound proposition in the jurisprudence of North Carolina.

These principles were confirmed in Watts v. Pama Manufacturing Company, 256 N.C. 611, 124 S.E.2d 809 (1960)—vibration from a factory—apparently the latest pronouncement by the Supreme Court of North Carolina. Although in both opinions it referred to the Restatement of the Law of Torts, in effect recovery was declared permissible on the Cardozo thesis.

Our Circuit spoke similarly to the question in Norfolk & W. Ry. v. Amicon Fruit Co., 269 F. 559, 561–562, 14 A.L.R. 547 (4 Cir.1920):

"Defendant built this pipe line on its own land and for its own benefit, acting thereby in a private capacity and without legislative authority. However skillfully the work was done and whatever the diligence since exercised, it must be held responsible, not perhaps for a purely accidental occurrence, but for those injuries to an adjoining owner which actually and repeatedly and as it were inevitably resulted, despite the care with which the pipe line was maintained and used. This is the doctrine of Rylands v. Fletcher, L.R. I Exch. 265, long regarded as a leading case, and of the following * * *." (Citations omitted.)

To me the law of North Carolina more closely resembles Rylands v. Fletcher than it does the Restatement.

North Carolina does not hold with the theory that the creator of a nuisance is liable only from the time he is caught. The State does not allow him one bite. I would reverse the judgment on appeal, and give judgment on the finding of damages made by the District Court.